UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM DIVISION

In re:

Enclave at Hillsboro, LLC, et al.,                    Chapter 11

                                                      Case No.: 15-26155-EPK
                                                      Case No.: 15-26148-EPK
                                                      Case No.: 15-26162-EPK
                                                      Case No.: 15-26156-EPK
                                                      Case No.: 15-26165-EPK
                                                      Case No.: 15-26152-EPK
                                                      Case No.: 15-26141-EPK
                                                      Case No.; 15-26143-EPK

                                                      (jointly administered)

                        Debtors.
_____/

## **DEBTORS' PLAN OF REORGANIZATION**


March 7, 2016

Bradley S. Shraiberg
Bernice C. Lee
SHRAIBERG, FERRARA & LANDAU, P.A.
2385 NW Executive Center Drive, Ste. 300
Boca Raton, FL 33431
Telephone: (561) 443-0800
Facsimile:  (561) 998-0047
Email: bshraiberg@sfl-pa.com
Email: blee@sfl-pa.com

**ATTORNEYS FOR THE DEBTOR**

TABLE OF CONTENTS

ARTICLE I DEFINITIONS ............................................................................. 5
ARTICLE II BACKGROUND OF DEBTORS AND COMMENCEMENT OF THIS
CHAPTER 11 CASE ................................................................................... 13
   2.01.   Background of Debtors and Their Managers........................... 13
   2.02.   Commencement of Chapter 11 Cases .................................... 14
   2.03.   Substantive Consolidation ..................................................... 14
   2.04.   Settlement with BI Boca ........................................................ 15
   2.05.   Settlement with 13th Floor and Colony ................................. 15
   2.06.   The Sale or Refinancing......................................................... 15
   2.07.   Retained Professionals ........................................................... 16
ARTICLE III TREATMENT OF UNCLASSIFIED CLAIMS: ADMINISTRATIVE
CLAIMS, PRIORITY TAX CLAIMS AND UNITED STATES TRUSTEE'S FEES ............. 16
   3.01.   Allowed Administrative Claims. ............................................ 16
   3.02.   Priority Tax Claims ................................................................ 16
   3.03.   United States Trustee's Fees. .................................................. 16
ARTICLE IV CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ........................ 17
ARTICLE V TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS ......... 18
   5.01.   Class 1.  Allowed Secured Taxing Authority Claims ................ 18
   5.02.   Class 2.  Allowed Lender Claim .............................................. 18
   5.03.   Class 3.  Allowed Priority Unsecured Claims ........................... 20
   5.04.   Class 4.  Allowed General Unsecured Claims .......................... 21
   5.05.   Class 5.  Allowed Equity Interests……………………………………22
ARTICLE VI  PROVISIONS REGARDING VOTING AND DISTRIBUTIONS
UNDER THE PLAN, ALLOWANCE OF CERTAIN CLAIMS, AND  TREATMENT
OF DISPUTED, CONTINGENT AND UNLIQUIDATED  ADMINISTRATIVE
EXPENSE CLAIMS, CLAIMS AND EQUITY INTERESTS ................................... 21
   6.01.   Solicitation of Votes .............................................................. 21
   6.02.   Voting of Claims and Equity Interests.................................... 22
   6.03.   Method of Distribution Under the Plan ................................. 22
   6.04.   Distributions Withheld for Disputed Claims .......................... 23
   6.05.   Procedures for Allowance or Disallowance of Disputed Claims and Related
           Deadlines................................................................................ 24
   6.06.   Disbursing Agent ................................................................... 26
   6.07.   Setoffs and Recoupment ........................................................ 26
   6.08.   Estimations of Claims ............................................................ 26
   6.09.   No Recourse ........................................................................... 27
   6.10.   Amendments to Claims........................................................... 27
   6.11.   Postpetition Interest on Claims .............................................. 27
   6.12.   Unclaimed Funds ................................................................... 27
ARTICLE VII EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........................... 27
   7.01.   Assumption or Rejection of Executory Contracts and Unexpired Leases........... 27
   7.02.   Cure of Defaults..................................................................... 29
   7.03.   Bar Date for Filing Proofs of Claim Relating to Executory Contracts and
           Unexpired Leases Rejected Pursuant to the Plan.................................. 29
   7.04.   Indemnification Obligations .................................................. 30

ARTICLE VIII MEANS FOR IMPLEMENTATION AND EFFECT OF
CONFIRMATION OF PLAN ................................................................. 30
    8.01.   General ........................................................................... 30
    8.02.   Continued Limited Liability Company Existence……………………………31
    8.03.   The Reorganized Debtors ................................................. 30
    8.04.   Effectiveness of Securities, Instruments and Agreements ................... 31
    8.05.   Limited Liability Company Action ................................... 31
    8.06.   Approval of Agreements ................................................. 31
    8.07.   No Change of Control ..................................................... 31
    8.08.   Administration After Effective Date ................................ 31
    8.09.   Term of Bankruptcy Injunction or Stays ......................... 31
    8.10.   Vesting of Assets ........................................................... 32
    8.11.   Causes of Action ........................................................... 32
    8.12.   Discharge of Debtors……………………………………………………………33
    8.13.   Injunction Related to Discharge. .................................... 32
    8.14.   Release by Holders of Impaired Claims……………………………………33
    8.15.   Injunction Against Interference with the Plan ................... 33
    8.16.   Votes Solicited in Good Faith ......................................... 33
    8.17.   Payments Within 90 Days of Filing……………………………………………34
ARTICLE IX   CONFIRMATION AND EFFECTIVENESS OF THE PLAN .......................... 34
    9.01.   Conditions Precedent to Effective Date ........................... 34
    9.02.   Effect of Failure of Conditions ...................................... 35
    9.03.   Waiver of Conditions ..................................................... 35
ARTICLE X   RETENTION OF JURISDICTION ............................................... 35
ARTICLE XI   MISCELLANEOUS PROVISIONS .............................................. 36
    11.01.  Effectuating Documents and Further Transactions .......................... 36
    11.02.  Exemption from Transfer Taxes ..................................... 37
    11.03.  Authorization to Request Prompt Tax Determinations .......................... 37
    11.04.  Exculpation ................................................................... 37
    11.05.  Injunction Relating to Exculpation ................................ 37
    11.06.  Post-Effective Date Fees and Expenses .......................... 38
    11.07.  Payment of Statutory Fees ............................................. 38
    11.08.  Amendment or Modification of Plan ............................... 38
    11.09.  Severability .................................................................. 38
    11.10.  Revocation or Withdrawal of the Plan ........................... 39
    11.11.  Binding Effect Notices ................................................... 39
    11.12.  Notices ......................................................................... 39
    11.13.  Governing Law ............................................................. 40
    11.14.  Withholding and Reporting Requirements ...................... 40
    11.15.  Section 1125(e) of the Code .......................................... 40
    11.16.  Filing of Additional Documents ..................................... 40
    11.17.  No Admissions .............................................................. 40
    11.18.  Waiver of Bankruptcy Rule 3020(e) and 7062 ................ 41
    11.19.  Time ............................................................................. 41
    11.20.  Substantial Consummation ............................................ 41
    11.21.  Final Decree ................................................................. 41

11.22.  Inconsistency ........................................................................................ 41

11.23.  No Interest or Attorneys' Fees ............................................................. 41

11.24.  Successors and Assigns ......................................................................... 41

11.25.  Headings ................................................................................................ 41

11.26.   No Penalty for Prepayment ................................................................. 42

11.27.  Savings Clause ...................................................................................... 42

11.28.  Remedy of Defects ................................................................................ 42

ARTICLE XII CONCLUSION ....................................................................... 42

CERTIFICATE OF SERVICE ......................................................................... 44

# DEBTORS' PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Enclave at Hillsboro, LLC, Hillsboro Mile Properties, LLC, Antipodean Properties, LLC, Remi Hillsboro, LLC, Kerekes Land Trust Properties, LLC, Estates of Boynton Waters Properties, LLC, Enclave at Boynton Waters Properties, LLC, and Lake Placid Waterfront Properties, LLC (individually, the "Debtor" and collectively, the "Debtors") hereby propose the following plan of reorganization under section 1121(a) of the Code:

## ARTICLE I

## DEFINITIONS

As used in this Plan, the following terms shall have the respective meanings set forth below, and such meanings shall be equally applicable to the singular and plural forms of the terms defined unless the context requires otherwise.

"*13th Floor*" shall mean 13th Floor Investments, LLC.

"*13th Floor Settlement*" shall mean the Settlement Agreement entered into by the Debtors, Mr. Kennelly, 13th Floor and Colony in March 2016.

"*13th Floor Claims*" is defined in section 2.05 of the Plan.

"*Actions*" shall mean all actions that a Trustee or debtor in possession is empowered to bring pursuant to the Code, including, without limitation, any cause of action, lawsuit, adversary proceeding, contested matter, claim objection, Avoidance Action, or right of the Debtor or the Estate against any Person.

"*Additional Foreclosure and Bankruptcy Fees*" is defined in section 5.02(a) of the Plan.

"*Administrative Claim*" shall mean a claim for payment of an administrative expense under section 503 of the Code that is entitled to priority under section 507(a)(1) of the Code and any fees or charges assessed against the Estates pursuant to 28 U.S.C. § 1930.

"*Administrative Claim Bar Date*" shall mean the date set by the Court for all creditors and parties in interest to file and serve Administrative Claims.

"*Administrative Claimant*" shall mean the holder of an Administrative Claim.

"*Affiliate*" shall mean with respect to any Person, any other Persons that would fall within the definition assigned to such term in section 101(2) of the Code, if such Person was a debtor in a case under the Code.

"*Allowed Amount*" shall mean with respect to a Claim (a) the amount of a Claim that was listed in the Debtor's Schedules (as originally filed in this Case) as not disputed, contingent or unliquidated, if the holder of such Claim has not filed a proof of claim with the Court within the

applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules, or (b) if a holder of a Claim has filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to 3003(c)(3) of the Rules:  (i) the amount stated in such proof of claim or in the Schedules if no objection to such proof of claim or amount listed in the Schedules has been interposed within the applicable period of limitation fixed by the Code or Rules, or as otherwise fixed by the Court, or (ii) such amount as shall be fixed by an order of the Court which has become a Final Order, if an objection has been interposed within the applicable period of limitation fixed by the Code, the Rules, or the Court, or (c) with respect to a Fee Request, such amount as shall be fixed by an order of the Court which has become a Final Order. In no event shall the Allowed Amount of any Priority Claim, Convenience Claim, or Unsecured Claim include interest accrued on such Claim after the Filing Date.

"***Allowed Claim***" shall mean any Claim which is not a Disputed Claim for which an Allowed Amount has been finally determined in such Allowed Amount.

"***Allowed Equity Interest***" shall mean any Equity Interest which has not been timely disputed, or if timely disputed, which has been allowed by order of the Court which has become a Final Order.

"***Article***" shall mean one of the numbered Articles of the Plan.

"***Assets***" shall mean all of the right, title, and interest of the Debtors in and to Property of the Estate, whether tangible or intangible.

"***Assumption List***" shall mean the list of executory contracts and unexpired leases to be assumed pursuant to Article VII of the Plan, which shall be filed with the Clerk of the Court as a part of the Plan Supplement.

"***Avoidance Actions***" shall mean the Actions pursuant to Chapter 5 of the Code, including, without limitation, rights to recover property or money pursuant to sections 542-553 of the Code.

"***Ballot***" shall mean the ballot upon which holders of Claims and Equity Interests in each Impaired Class of Claims and Equity Interests that are entitled to vote on the Plan shall indicate their acceptance or rejection of the Plan and, if applicable, such other elections as may be made thereon are to be indicated.

"***Ballot Deadline***" shall mean the last day established by order of the Court for filing a Ballot with the Clerk of the Court.

"***BI Boca***" shall mean BI Boca Boynton Portfolio, LLC.

"***BI Boca Settlement***" is the settlement agreement entered into by the Debtors and BI Boca on November 15, 2015, a copy of which is attached to the Court's order approving the settlement [ECF No. 56].

"***Business Day***" shall mean a day other than a Saturday, a Sunday, or a day on which commercial banks in West Palm Beach, Florida are authorized or required to close.

"***Case***" shall mean the above-referenced lead Chapter 11 case, pending before the United States Bankruptcy Court for the Southern District of Florida, and collectively with all the jointly administered cases, the ***"Cases"***.

"***Cash***" shall mean legal tender of the United States of America.

"***Claim***" shall mean (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed or contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; (c) withoutt limiting the generality of the foregoing, all Administrative Claims, Priority Claims, Secured Claims, and Unsecured Claims.

"***Claims Bar Date***" shall mean the date scheduled by the Court as the last date for creditors, other than a governmental unit, and holders of Equity Interests to file Proofs of Claim or Equity Interest in the Case.

"***Class***" shall mean a group of Claims or Equity Interests classified together pursuant to Article V of the Plan.

"***Class 1***" shall mean the Allowed Secured Taxing Authority Claims, as described, classified and treated in Section 5.01 of this Plan.

"***Class 2***" shall mean the Allowed Lender Claim, as described, classified and treated in Section 5.02 of this Plan.

"***Class 3***" shall mean the Allowed Priority Unsecured Claims, as described and classified in Section 5.03 of the Plan.

"***Class 4***" shall mean the Allowed General Unsecured Claims, as described and classified in Section 5.04 of the Plan.

"***Class 5***" shall mean the Allowed Equity Interests, as described, classified and treated in Section 5.05 of this Plan.

"***Code***" shall mean the Bankruptcy Code, 11 U.S.C. §§ 101 et. seq.

"***Collateral***" shall mean any property or interest in Property of the Estate of the Debtors subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Code or otherwise is invalid under the Code or applicable state law.

"***Colony***" shall mean Colony Capital Acquisitions LLC.

"*Confirmation*" shall mean the entry by the Court of the Confirmation Order.

"*Confirmation Date*" shall mean the date on which the Clerk of the Court enters the Confirmation Order on the Docket.

"*Confirmation Hearing*" shall mean a hearing held by the Court to consider Confirmation of the Plan pursuant to section 1128 of the Code.

"*Confirmation Order*" shall mean the order entered by the Court confirming the Plan, which shall contain such provisions as the Debtors desire and shall otherwise be in a form and substance satisfactory to the Debtors.

"*Court*" shall mean the United States Bankruptcy Court for the Southern District of Florida, including any Bankruptcy Judge thereof, and any court having competent jurisdiction to hear appeals from the Bankruptcy Judges thereof.

"*Creditor*" shall mean any Person holding a Claim or Equity Interest, including Administrative Claimants and Claims of the kind specified in sections 502(b), 502(h), and 502(i) of the Code, and such Person's heirs, successors, assigns, executors, and personal representatives.

"*Debtor*" *or* "*Debtor in Possession*" shall mean individually Enclave at Hillsboro, LLC, Hillsboro Mile Properties, LLC, Antipodean Properties, LLC, Remi Hillsboro, LLC, Kerekes Land Trust Properties, LLC, Estates of Boynton Waters Properties, LLC, Enclave at Boynton Waters Properties, LLC, and Lake Placid Waterfront Properties, LLC, and collectively, the foregoing debtors will be referred to as *"Debtors" or "Debtors in Possession"*.  Any reference to the "Debtor" or "Debtors" shall also include the Debtor or Debtors in their capacity as debtors in possession in the Case, and vice-versa.

"*Disputed Amount*" shall mean with respect to a particular Disputed Claim, that amount which is equal to the difference, if any, between the Face Amount of such Claim and the amount, if any, of such Claim which the party objecting thereto concedes.

"*Disputed Claims Reserve*" is defined in 6.04(a).

"*Disbursing Agent*" shall mean John S. Kennelly, or his assigns.

"*Disputed Claim*" shall mean any Claim for which an Allowed Amount has not yet been determined, and with respect to which an objection has been interposed on or prior to the Confirmation Date or such other date as may be fixed by the Court and which objection has not been withdrawn or determined by a Final Order, or which is listed on the Schedules as disputed, contingent or unliquidated, including, though not limited to, Disputed Secured Claims, Disputed Priority Claims, and Disputed General Unsecured Claims.  Distributions withheld for Disputed Claims are described in Article VI of the Plan.  Holders of Disputed Claims shall not be entitled to vote on the Plan, unless otherwise provided for in the Plan.

"***Disputed Claims Reserve***" shall have the meaning set forth in Section 6.04(a) of the Plan.

"***Distribution***" shall mean funds to be paid to holders of Claims pursuant to Article III, Article IV, Article V and Article VI of the Plan.

"***Distribution Date***" shall mean the dates upon which Distributions may be made pursuant to Article VI of the Plan.

"***Docket***" shall mean the docket maintained in this Case by the Clerk of the Court.

"***Effective Date***" shall be described in the Confirmation Order and shall occur upon the occurrence of the conditions precedent to the occurrence of the Effective Date as set forth in Section 9.01 of the Plan.

"***Equity Interest***" shall mean any ownership or equity interest in the Debtors, including without limitation, interests evidenced by common or preferred stock, warrants, options, or other rights to purchase any ownership or equity interest in the Debtors.

"***Estate***" shall mean the Estate created in this Case pursuant to section 541 of the Code.

"***Exculpated Parties***" is defined in Section 11.04 of the Plan.

"***Executory Contract***" shall mean a contract or unexpired lease to which any of the Debtors is a party and that is executory within the meaning of section 365 of the Code.

"***Face Amount***" shall mean with respect to a particular Claim, (a) if the holder of such Claim has not filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules, the amount of such Claim that was listed in the Schedules (as originally filed in this Case) as not disputed, contingent or unliquidated; or (b) if the holder of such Claim has filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules, the amount stated in such proof of claim, or (c) with respect to a Fee Request, the net amount to which the applicant would be entitled if its application were to be granted in full.

"***Fee Request***" shall mean an application or request for payment by the Estate of fees, compensation for services rendered or reimbursement of expenses, pursuant to Rule 2016 of the Rules or other applicable provision of the Code or the Rules.

"***Filing Date***" shall mean September 8, 2015, the date on which the Debtors commenced the Cases by filing a voluntary petition under chapter 11 of the Code.

"***Final Order***" shall mean an order or judgment of the Court as entered on the Docket that has not been reversed, stayed, modified, or amended, and respecting which the time to appeal, petition for certiorari or seek reargument, review or rehearing has expired, and as to which no appeal, reargument, petition for certiorari, review or rehearing is pending, or as to which any

right to appeal, reargue, petition for certiorari or seek review or rehearing has been waived in writing in a manner satisfactory to the Debtors, or, if any appeal, reargument, petition for certiorari, review or rehearing thereof has been denied, the time to take further appeal or to seek certiorari or further rehearing, review or reargument has expired.  If any provision of the Plan requires the entry of a Final Order as a condition to the occurrence or performance of an act, the Debtors may waive such requirement in accordance with the Plan.

*"Financing"* is defined in section 2.05 of the Plan.

"*General Unsecured Claim*" shall have the same meaning as Unsecured Claim.

"*Governmental Claims Bar Date*" shall mean the date scheduled by the Court as the last date for a governmental unit to file Proofs of Claim in the Case.

"*Impaired*" shall mean an Allowed Claim or Allowed Equity Interest that is Impaired within the meaning of section 1124 of the Code.

*"Lender Claim"* is defined in section 5.02(a) of the Plan.

"*Late Filed Claim*" shall mean either: (a) a Claim filed after the Claims Bar Date by a creditor or holder of an Equity Interest that is not a governmental unit; or (b) a Claim filed after the Governmental Claims Bar Date by a governmental unit creditor or holder of an Equity Interest.

"*Lien*" shall mean a charge against or interest in any item of Property of the Estate to secure payment of a debt or performance of an obligation.

*"Mr. Kennelly"* shall mean John B. Kennelly.

*"November 15, 2015 Claim"* is defined in section 5.02(a) of the Plan.

*"Objection Deadline"* is defined in 6.05(a) of the Plan.

*"Objection to Rejection Claims Deadline"* is defined in 6.05(a) of the Plan.

*"One Year Period"* is defined in section 5.02(b) of the Plan.

"*Person*" shall mean any individual, sole proprietorship, partnership (general or limited), joint venture, trust, unincorporated organization, association, corporation, institution, entity, or government (whether federal, state, county, city, municipal or otherwise, including, without limitation, any instrumentality, division, agency, body, political subdivision or department thereof).

"*Petition Date*" shall mean the Filing Date.

"*Plan*" shall mean this Plan of Reorganization in the present form or as it may be modified, amended, or supplemented from time to time.

"**Plan Administrator**" shall mean the Disbursing Agent.

"**Plan Documents**" shall mean the documents to be filed as a part of the Plan Supplement.

"**Plan Supplement**" shall mean the Assumption List, and list of Actions which shall be identified and otherwise filed with the Clerk of the Court on or before twenty (20) days prior to the commencement of the Confirmation Hearing.

"**Priority Claim**" shall mean a Claim that is entitled to priority (other than a Priority Tax Claim) under section 507 of the Code.

"**Priority Tax Claim**" shall mean a Claim (other than an Administrative Claim or Priority Claim) that is entitled to priority under section 507(a)(8) of the Code.

"**Professional**" shall mean any professional employed in these Cases pursuant to sections 327, 328 or 1103 of the Code or otherwise pursuant to an order of the Court.

"**Property**" is defined in section 5.02(a) of the Plan.

"**Property of the Estate**" shall mean the property defined in section 541 of the Code as it relates to the Debtors.

"**Refinancing Fees**" is defined in section 5.02(a) of the Plan.

"**Rejected Contract**" shall mean an Executory Contract that is rejected at any time during this Case or pursuant to Article VII of the Plan.

"**Rejection Claim**" shall mean a Claim arising under section 502(g) of the Code in its Allowed Amount.

"**Reorganized Debtor**" shall mean the Debtors, as reorganized, on or after the Effective Date.

"**Rules**" shall mean the Federal Rules of Bankruptcy Procedure.

"**Sale Assets**" is defined in section 2.05 of the Plan.

"**Sale**" or "**Sales**" is defined in section 2.05 of the Plan.

"**Schedules**" shall mean the Schedules of assets and liabilities originally filed by the Debtors with the Court and not as the same may be amended from time to time.

"**Section**" shall mean a numbered subsection of any Article of the Plan.

"***Secured Claim***" shall mean a Claim secured by a Lien on property in which the Estate has an interest or that is subject to set-off under section 553 of the Code to the extent of the value of the interest attributable to such Claim in the Estate's interest in such property or to the extent of the amount subject to set-off.

"***Secured Taxing Authority Claim***" shall mean ad valorem taxes assessed against the real property owned by the Debtors in the ordinary course of business.

"***Six Month Period***" is defined in section 5.02(b) of the Plan.

"***SFL***" is defined in 2.06 of the Plan.

"***Sub Con Motions***" is defined in 2.03 of the Plan.

"***Substantial Consummation***" shall mean that the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Code.

"***Ten Month Period***" is defined in section 5.02(b) of the Plan.

"***Unimpaired***" shall mean an Allowed Claim or Allowed Equity Interest that is <u>not</u> Impaired within the meaning of section 1124 of the Code.

"***Unsecured Claim***" shall mean a Claim other than a Secured Taxing Authority Claim, a Secured Claim, a Priority Claim, a Priority Tax Claim, or an Administrative Claim.

"***Unsecured Creditor***" shall mean the holder of an Unsecured Claim.

"***U.S. Trustee's Fees***" shall consist of those fees due to the United States Trustee as required pursuant to 28 U.S.C. §1930(a)(6).

"***Rules of Construction and Interpretation***"

The following rules of construction shall be applicable for all purposes of the Plan unless the context clearly requires otherwise:

(a) The terms "include", "including", and similar terms shall be construed as if followed by the phrase "without being limited to".

(b) Words of masculine, feminine, or neutral gender shall mean and include the correlative words of the other genders, and words importing the singular number shall mean and include the plural number, and vice-versa.

(c) All article, section, and exhibit or appendix captions are used for convenience and reference only, and in way define, limit, or describe the scope or intent of, or in any way affect, any such article, section, exhibit, or appendix.

## ARTICLE II

## BACKGROUND OF DEBTORS AND COMMENCEMENT OF THIS CHAPTER 11 CASE

### 2.01.    Background of Debtors and Their Managers

The Debtors are Florida limited liability companies with a principal address and mailing address of 6849 Cobia Circle, Boynton Beach, Florida.  The Debtors primarily own residential and commercial real property.  Specifically:

a.  Enclave at Hillsboro owns two parcels located at 1174 through 1185 Hillsboro Mile in Hillsboro Beach, Florida, and approximately 50 concrete seawall panels;

b.  Hillsboro Mile Properties, LLC owns a lot located at 1103 and 1105 Hillsboro Mile in Hillsboro Beach, Florida, and no personal property;

c.  Antipodean Properties, LLC owns two parcels located at 2511 and 2513 N. Riverside Dr. Pompano Beach, Florida, and no personal property;

d.  Remi Hillsboro, LLC owns a lot located at 1107 Hillsboro Mile in Hillsboro Beach, Florida, and no personal property;

e.  Kerekes Land Trust Properties, LLC owns a parcel at the north-east corner of Boynton Beach Blvd. and Jog Road in Boynton Beach, Florida, and no personal property;

f.  Estates of Boynton Waters Properties, LLC owns two lots located at 6819 and 6825 Cobia Circle in Boynton Beach, Florida, and no personal property;

g.  Enclave at Boynton Waters Properties, LLC owns approximately 37 lots located at Esprit Way, Captiva Way in Boynton Beach, Florida, and no personal property; and

h.  Lake Placid Waterfront Properties, LLC owns a lot located at 2886 NE 30 Street, Lighthouse Point, Florida, and a counterclaim in litigation relating to sale commission for the prior sale of a lot.

The value of all of the Debtors' real property totals approximately $125,050,000.00 based on offers received, and $66,781,178.00 based on the property tax assessed value.

Mr. Kennelly is the manager of all of the Debtors, and the 100% membership owner of Enclave at Hillsboro, LLC, Hillsboro Mile Properties, LLC, Remi Hillsboro, LLC and Lake Placid Waterfront Properties, LLC.  He is also the president of Estates of Boynton Waters West Corp., who is the 100% membership owner and managing member of Estates of Boynton Waters Properties, LLC, and the president of Enclave at Boynton Waters Corporation, who is the 100% membership owner and managing member of the Enclave at Boynton Waters Properties, LLC. Mr. Kennelly is also the managing member and a 40% membership owner of Antipodean Properties, LLC.  Maurice O. Rhinehardt is the managing member and a 60% membership owner

of Antipodean Properties, LLC, and the trustee of The Kerekes Land Trust No. 9, who is the 100% membership owner and managing member of Kerekes Land Trust Properties, LLC.

### 2.02.  Commencement of Chapter 11 Cases

The Debtors filed the Case in order to restructure their debts, maximize the value of their assets, and provide a 100% distribution to Creditors holding Allowed Claims.

### 2.03.  Substantive Consolidation

On September 21, 2015, prior to the joint administration of the Debtors' cases, each Debtor filed a *Motion to Approve Substantive Consolidation of Related Debtors with Enclave at Hillsboro, LLC* in their respective case (collectively, the "Sub Con Motions") [*see* ECF No. 21 in 15-26148-EPK; ECF No. 21 in 15-26155-EPK; ECF No. 22 in 15-26143-EPK; ECF No. 27 in 15-26162-EPK; ECF No. 26 in 15-26156-EPK, ECF No. 28 in 15-26165-EPK; ECF No. 23 in 15-26141-EPK; and ECF No. 22 in  15-26152-EPK], which the Debtors hereby incorporate by reference.

Upon Confirmation of the Plan, Hillsboro Mile Properties, LLC, Antipodean Properties, LLC, Remi Hillsboro, LLC, Kerekes Land Trust Properties, LLC, Estates of Boynton Waters Properties, LLC, Enclave at Boynton Waters Properties, LLC, and Lake Placid Waterfront Properties, LLC will be substantively consolidated with the estate of Enclave at Hillsboro, LLC for the following limited purposes during the pendency of the Case:

  a.  Treating assets of the eight estates as being a single estate of Enclave at Hillsboro, LLC, including avoidance actions under Chapter 5 of the Bankruptcy Code;

  b.  Permitting defendants of any of the foregoing avoidance actions to assert defenses against any of the Debtors against the plaintiff, Enclave at Hillsboro, LLC;

  c.  Treating all claims against the Debtors as against the single estate of Enclave at Hillsboro, LLC;

  d.  Having a single plan of reorganization filed by, or filed in the lead case of, Enclave at Hillsboro, LLC with all creditors of the Debtors voting on such plan;

  e.  Ignoring, for purposes of the Plan, the separate corporate structures of the Debtors so that there will be a single plan without formally merging the Related Debtors into the Enclave at Hillsboro, LLC so that title for real property held by each Debtor will remain with that Debtor and that after the confirmation the Debtors will still have their original separate corporate existences; and

  f.  Eliminating duplicative claims by the same creditor asserted against more than one estate.

### 2.04.  Settlement with BI Boca

On November 15, 2015, the Debtors and BI Boca entered into the BI Boca Settlement. On November 25, 2015, the Court entered an order approving the foregoing settlement, and providing for a 14 day objection period [ECF No. 56], and a copy of the BI Boca Settlement is attached to such order.  13th Floor was the only party that filed an objection.  On December 16, 2015, the Court overruled such objection and entered an *Order Overruling Objection* [ECF No. 63].  The BI Boca Settlement is discussed in more detail in section 5.02 of the Plan.

### 2.05.  Settlement with 13th Floor and Colony

In March 2016, the Debtors, Mr. Kennelly, 13th Floor and Colony entered into the 13th Floor Settlement that *inter alia* resolved the proof of claim for general unsecured claim in the amount of $829,309 that 13th Floor asserted against each of the Debtors (the "13th Floor Claims") for an Allowed Unsecured Claim in the amount of $50,000, and a payment in the amount of $275,000 from John S. Kennelly.  The Debtors will file a motion with the Court for approval of the 13th Floor Settlement.  The terms of the 13th Floor Settlement are incorporated herein by reference.

### 2.06.  The Sale or Refinancing

In order to provide for the payments under the Plan, the Debtors shall sell all or part of the following real property, free and clear of all liens, claims, encumbrances, and other interests, in whatever manner the Debtors decide in their sole discretion as long as the Sale(s) (defined below) provide sufficient funds to provide for all payments under the Plan: a) the vacant residential lot located at 1107 Hillsboro Mile in Hillsboro Beach owned by Remi Hillsboro, LLC, b) the vacant residential lot located at 1103 and 1105 Hillsboro Mile in Hillsboro Beach by Hillsboro Mile Properties, LLC, and c) two vacant residential parcels located at 1174 through 1185 Hillsboro Mile in Hillsboro Beach owned by Enclave at Hillsboro, LLC (collectively, the "Sale Assets"), or the Debtor shall obtain refinancing or financing from a third party investor (together, the "Financing"), subject to the following timeframe (the "Sale" or "Sales"):

    a.    The closing of the Sale(s) or Financing that will provide sufficient funds for all payments required under the Plan shall occur on or before November 14, 2016, which is the end of the One Year Period (as defined in section 5.02 of the Plan);

    b.    In the event the Debtors do not have a non-contingent, fully executed, contract(s) for the sale of part or all of the Sale Assets, on or before September 14, 2016, which is the end of the Ten Month Period (as defined in section 5.02 of the Plan), or some other later date agreed to by the Debtor and BI Boca, the Debtors shall schedule an auction of part or all of the Sale Assets on or before October 14, 2016; ; provided that, the Debtors may cancel the auction at any time in the event they obtain a binding, fully executed, non-contingent contract(s) for the sale of part or all of the Sale Assets that will provide sufficient funds for all payments required under the Plan and that will close on or before November 14, 2016; and

     c.   The proposed Sale(s) or Financing will provide for sufficient funds to provide for all payments required under the Plan.

The Debtors will seek the approval of bid procedures, any Sale, and other related matters through the appropriate Motion(s) to be filed with the Court after the date of the Plan.

### 2.07.  Retained Professionals

The Bankruptcy Court authorized the Debtors to retain certain professionals in connection with the Chapter 11 Case.  Specifically, the Debtors have sought and obtained approval to retain Shraiberg, Ferrara & Landau, P.A. ("SFL") as general bankruptcy counsel and Moecker Realty Auctions LLC as a broker and auctioneer.  The Debtors may seek to employ additional professionals in connection with the Case.

## ARTICLE III

## TREATMENT OF UNCLASSIFIED CLAIMS: ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS AND UNITED STATES TRUSTEE'S FEES

The following Administrative Claims, Priority Tax Claims, and United States Trustee's Fees will be treated as follows:

### 3.01.  Allowed Administrative Claims.

Allowed Administrative Claims shall be paid upon the date on which such Claims become due in the ordinary course, in accordance with the terms and conditions of any agreement relating thereto or upon such other dates and terms as may be agreed upon by the holders of such Allowed Administrative Claims.  All other holders of Allowed Administrative Claims (with the exception of the professionals who will be paid 100% of the amount allowed by the Bankruptcy Court upon application to the Bankruptcy Court and those Claims otherwise specifically dealt with in the Plan) shall be paid 100% of their respective Allowed Administrative Claims in cash, unless otherwise ordered by the Bankruptcy Court, upon the latter of (i) the Effective Date, or, (ii) the date on which an order approving payment of such Administrative Claim becomes a Final Order.

### 3.02.  Priority Tax Claims

Except to the extent that a holder of an Allowed Priority Tax Claim under section 507(a)(8) of the Code has been paid by the Debtors prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall be paid in the ordinary course of Debtors' business on the date of assessment of such Claim.

### 3.03.  United States Trustee's Fees.

The Debtors shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) through Confirmation on the Effective Date.  The Debtors shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) for

post-confirmation periods within the time periods set forth in 28 U.S.C. §1930(a)(6), until the earlier of the closing of the Case by the issuance of a Final Decree by the Bankruptcy Court, or upon entry of an order of the Bankruptcy Court dismissing the Case, or converting the Case to another chapter under the Code, and the Debtors shall provide to the United States Trustee upon the payment of each post-confirmation payment an appropriate affidavit indicating disbursement for the relevant periods.

## ARTICLE IV

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

For purposes of this Plan, the Classes of Claims and Equity Interests against or in the Debtors shall be as follows:

"*Class 1*" shall mean the Allowed Secured Taxing Authority Claims with respect to the Property, as described, classified and treated in Section 5.01 of this Plan.  This Class is impaired within the meaning of section 1124 of the Bankruptcy Code.

"*Class 2*" shall mean the Allowed Lender Claim, as described, classified and treated in Section 5.02 of this Plan.  This Class is impaired within the meaning of section 1124 of the Bankruptcy Code.

"*Class 3*" shall mean the Allowed Priority Unsecured Claims, as described and classified in Section 5.03 of the Plan.  This Class is unimpaired within the meaning of 1124 of the Bankruptcy Code.

"*Class 4*" shall mean the Allowed General Unsecured Claims, as described and classified in Section 5.04 of the Plan.  This Class is unimpaired within the meaning of 1124 of the Bankruptcy Code.

"*Class 5*" shall mean the Allowed Equity Interests, as described, classified and treated in Section 5.05 of this Plan.  This Class is not impaired within the meaning of 1124 of the Bankruptcy Code.

| Class | Description | Status | Voting Status |
|-------|-------------|--------|---------------|
| Class 1 | Allowed Secured Taxing Authority Claims | Impaired | Yes. |
| Class 2 | Allowed Lender Claim | Impaired | Yes. |
| Class 3 | Allowed Priority Unsecured Claims | Impaired | Yes. |
| Class 4 | Allowed General Unsecured Claims | Impaired | Yes. |
| Class 5 | Allowed Equity Interests | Impaired | No.  Insiders. |

## ARTICLE V

## TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

### 5.01.    Class 1.  Allowed Secured Taxing Authority Claims

(a)    Description.  Class 1 consists of the Allowed Secured Taxing Authority Claims. The Debtors estimate that the Allowed Secured Taxing Authority Claims are in the amount of $1,162,606.50.

(b)    Treatment.  On the Effective Date, the holders of the Allowed Secured Taxing Authority Claims shall receive, in full satisfaction, settlement, release, extinguishment and discharge of such Claims, payment in an amount that will provide each holder of the Allowed Secured Taxing Authority Claim the entire Allowed Amount of such Claim, except to the extent that a holder of an Allowed Secured Taxing Authority Claim has been paid by the Debtors, with an interest rate established at the statutory rate or as otherwise determined by the Court.  The foregoing payments will be provided from the net proceeds of the Sale(s) or Financing on or before November 14, 2016.

(c)    Impairment.  The Class 1 Claims are Impaired.

### 5.02    Class 2.  Allowed Lender Claim

(a)    Description.  Class 2 consists of the Allowed Lender Claim, which consists of the Lender Claim (defined below) held by BI Boca that consists of the following: (i) the Final Judgment of $38,047,369.60 as of July 29, 2015; (ii) the Fee Order of $155,305.87 as of July 29, 2015; (iii) additional fees in the amount of $71,158.57 paid by BI Boca in connection with the Debtors' attempted refinancing of the indebtedness owed to BI Boca ("Refinancing Fees"); (iv) interest on the Final Judgment and Fee Order calculated at the rate of 4.75% per year from the date of July 29, 2015 through November 14, 2015, for a total amount of $541,902.33; (v) additional fees in the amount of $123,678.75 incurred by BI Boca in connection with the foreclosure case and the Case ("Additional Foreclosure and Bankruptcy Fees") and collectively with the Final Judgment, the Fee Order, the Refinancing Fees and Additional Foreclosure and Bankruptcy Fees, the "November 15, 2015 Claim" in the total amount of $38,939,415.12; (vi) the additional interest and forbearance fee as set forth below; and (vii) all additional costs, charges, expenses and reasonable attorneys' fees paid and disbursements paid or incurred by BI Boca in connection with the loan documents that are billed after October 30, 2015, including without limitation in connection with the Foreclosure Case and the Case ((i) through (vii), collectively, the "Lender Claim").  The loan made by BI Boca to the Debtors is secured by a perfected lien on, inter alia, all of the real property, improvements, fixtures; and other personal property owned by each of the Debtors (the "Property").

(b)    Treatment.  On the Effective Date, the holder of the Allowed Lender Claim shall receive, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, payment in an amount that will provide the holder of the Allowed Lender Claim the entire

Allowed Amount of such Claim in the following manner:

    i.    The Debtors and BI Boca agree that the Debtors shall have one year from November 15, 2015, i.e., on or before November 14, 2016 (the "One Year Period") to pay the Lender Claim in full, in cash;

    ii.    If the Lender Claim is paid in full, in cash, within six months from November 15, 2015, i.e., on or before May 14, 2016 (the "Six Month Period"), interest on the November 15, 2015 Claim shall be calculated at the rate of 11% per year from November 15, 2015 through the payoff date. Interest shall be calculated on the basis of the actual number of calendar days elapsed divided by a 360-day year;

    iii.    If the Lender Claim is not paid in full, in cash within the Six Month Period, interest on the November 15, 2015 Claim shall be calculated at the rate of 14% per year from November 15, 2015 through the payoff date, and BI Boca shall be entitled to a minimum Forbearance Fee equal to $4,618,647.29 [November 15, 2015 Claim x 14% / 360 x 305 days] (which is inclusive of interest). Interest shall be calculated on the basis of the actual number of calendar days elapsed divided by a 360-day year. If the Lender Claim is paid in full, in cash, after the Six Month Period, but within ten months of November 15, 2015, i.e., on or before September 14, 2015 (the "Ten Month Period"), Debtors shall be required to pay the Forbearance Fee to satisfy the Lender Claim;

    iv.    If the Lender Claim is paid in full after the Ten Month Period, interest on the November 15, 2015 Claim shall be calculated at the rate of 14% per year from November 15, 2015 through the payoff date. Interest shall be calculated on the basis of the actual number of calendar days elapsed divided by a 360-day year;

    v.    If the Debtors fail to pay the Lender Claim in full, in cash, within the One Year Period, the Debtors shall, without any further action by the Debtors, BI Boca, the Court, or any other party, be deemed to have immediately relinquished any and all right, title and interest in and to the Property to Lender;

    vi.    Debtors agree that the automatic stay shall be modified to permit BI Boca, at any time within ninety (90) days prior to the expiration of the One Year Period, to reset the Foreclosure Sale (as defined in the BI Boca Settlement) in State Court (as defined in the BI Boca Settlement) for any date after the expiration of the One Year Period (provided that if the Lender Claim is satisfied in full prior to the expiration of the One Year Period, such Foreclosure Sale will be canceled);

    vii.    Alternatively, at Lender's election and within a period of thirty days following written request by BI Boca, Debtors shall deliver to BI Boca deeds in lieu of foreclosure with respect to the Property, to be held in escrow until the expiration of the One Year Period, which shall be returned to the Debtors if the Lender Claim paid in full prior to the expiration of the One Year Period;

viii.     If the Debtors fail to duly and promptly observe, perform and discharge any covenant, term, condition or agreement contained in the BI Boca Settlement that are also incorporated herein, Debtors shall be in default. If Debtors fail to cure any such default within five (5) business days after receiving written notice thereof, BI Boca shall be entitled to complete relief from the automatic stay to exercise all of its remedies under the Loan Documents (as defined in the BI Boca Settlement) upon the filing of an affidavit attesting to the default and Debtors' failure to cure such default.  The exercise of such default remedies by BI Boca shall be without prejudice to BI Boca's right to receive payment in full of the Lender Claim as described herein;

ix.     Except as expressly set forth in the BI Boca Settlement and herein, other than defaults due to failure to list and market the Properties with brokers acceptable to Lender, all rights and obligations of the Debtors and BI Boca under the Loan Documents shall remain in full force and effect.  Without limitation, Debtors shall continue to maintain and insure the Property consistent with their obligations under the Loan Documents (as defined in the BI Boca Settlement) until the Lender Claim is paid in full in cash;

x.     Written notice to the Debtors or BI Boca with respect to the BI Boca Settlement and the related terms in the Plan shall be provided in the manner set forth in the BI Boca Settlement;

xi.     Any other relevant terms set forth in the BI Boca Settlement are hereby incorporated by reference; and

xii.     The Debtors are permitted to prepay without penalty.

xiii.     To the extent not inconsistent with this section, the loan documents relating to the Allowed Lender Claim are modified to eliminate any provisions regarding: (i) prepayment premiums or penalties; (ii) yield maintenance; and (iii) any financial defaults based upon any financial ratios.

Payment to the holder of the Allowed Lender Claim shall be provided from the net proceeds of the Sale(s) or Financing.

(c)     Impairment.  The Class 2 Claim is Impaired.

**5.03.**    **Class 3.**   **Allowed Priority Unsecured Claims**

(a)     Description. Class 3 consists of the Allowed Priority Unsecured Claims.  The Debtors estimate that the Allowed Priority Unsecured Claims are in the amount of $44,122.87.

(b)     Treatment. Within two weeks of the Effective Date, the holders of the Allowed Priority Unsecured Claims shall receive, in full satisfaction, settlement, release, extinguishment and discharge of such Claims, payment in an amount that will provide each holder of the

Allowed Secured Taxing Authority Claim the entire Allowed Amount of such Claim, except to the extent that a holder of an Allowed Priority Unsecured Claims has been paid by the Debtors. The foregoing payments will be provided from the net proceeds of the Sale(s) or Financing to be paid on or before November 28, 2016.

(c)    <u>Impairment</u>.  The Class 3 Claims are Impaired.

**5.04.   Class 4.  <u>Allowed General Unsecured Claims</u>**

(a)    <u>Description</u>. Class 4 consists of the Allowed General Unsecured Claims.  The Debtors estimate that the Allowed General Unsecured Claims are between $275,000.00 and $1,447,641.74, which estimates include 13th Floor's Allowed Unsecured Claim in the amount of $50,000.

(b)    <u>Treatment</u>.  Within two weeks of the Effective Date, the holders of the Allowed General Unsecured Claims shall receive, in full satisfaction, settlement, release, extinguishment and discharge of such Claims, payment in an amount that will provide each holder of the Allowed General Unsecured Claims the entire Allowed Amount of such Claim, except to the extent that a holder of an Allowed General Unsecured Claims has been paid by the Debtors.  The foregoing payments will be provided from the net proceeds of the Sale(s) or Financing to be paid on or before November 28, 2016.

(d)    <u>Impairment</u>.  The Class 4 Claims are Impaired.

**5.05.   Class 5.  <u>Allowed Equity Interests</u>**

(a)    <u>Description</u>.  Class 5 consists of Allowed Equity Interests.

(b)    <u>Treatment</u>.   On the Effective Date, the holders of Allowed Equity Interest shall retain their Equity Interests in the Debtors.  The holders of Allowed Equity Interests shall receive no Distribution under the Plan on account of such Equity Interests.

(c)    <u>Impairment</u>.  The Class 5 Claims are Impaired.

**ARTICLE VI**

**PROVISIONS REGARDING VOTING AND DISTRIBUTIONS
UNDER THE PLAN, ALLOWANCE OF CERTAIN CLAIMS, AND
TREATMENT OF DISPUTED, CONTINGENT AND UNLIQUIDATED
<u>ADMINISTRATIVE EXPENSE CLAIMS, CLAIMS AND EQUITY INTERESTS</u>**

**6.01.   <u>Solicitation of Votes</u>**

In accordance with sections 1126 and 1129 of the Bankruptcy Code, the Claims in Class 1, Class 2, Class 3, Class 4 and Class 5 are impaired and entitled to vote on the Plan.  Class 5 is impaired, and consists of Insider and thus their votes are not calculated when determining whether the Plan has been accepted for purposes of section 1129(a)(10).

An Impaired Class of Claims will have accepted the Plan if (i) the holders of at least two-thirds in amount of the Allowed Claims actually voting in the Class have voted to accept the Plan, and (ii) the holders of more than one-half in number of the Allowed Claims actually voting in the Class voted to accept the Plan, not counting the vote of any holder designated under section 1126(e) of the Bankruptcy Code or any insider.  A vote may be disregarded if the Court determines, after notice and a hearing, that acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Code.  Holders of Claims valued at an unknown amount, and holders of Disputed Claims, shall not be entitled to vote on the Plan, unless otherwise provided for in the Plan.

### 6.02.    Voting of Claims and Equity Interests

Each holder of an Allowed Claim or Equity Interest in an Impaired Class of Claims or Equity Interests that is entitled to vote on the Plan pursuant to the Code shall be entitled to vote separately to accept or reject the Plan as provided in such order as may be entered by the Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order or orders of the Court.  Holders of Claims valued at an unknown amount, and holders of Disputed Claims, shall not be entitled to vote on the Plan, unless otherwise provided for in the Plan.

### 6.03.    Method of Distribution Under the Plan

(a)    Subject to Rule 9010, and except as otherwise provided in Section 6.04 of the Plan, all distributions under the Plan shall be made by the Reorganized Debtors to the holder of each Allowed Claim or Allowed Equity Interest, in the manner provided for in the Plan, at the address of such holder as listed on the Schedules and/or Proof of Claim as of the Confirmation Date unless the Debtors or Reorganized Debtors have been notified in writing of a change of address, including by the filing of a proof of Claim by such holder that provides an address different from the address reflected on the Schedules.

(b)    Except as otherwise provided for in the Plan and Confirmation Order, any payment of Cash made by the Reorganized Debtors pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer.

(c)    Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(d)    When any distribution on account of an Allowed Claim pursuant to the Plan would otherwise result in a Distribution that is not a whole number, the actual distribution shall be rounded as follows:  fractions of ½ or greater shall be rounded to the next higher whole number and fractions of less than ½ shall be rounded to the next lower whole number.  Cash to be distributed pursuant to the Plan shall be adjusted as necessary to account for the rounding provided in Section 6.03(f) of the Plan.

(e)    In the event that any Distribution to any holder is returnable as undeliverable, the Debtors shall use reasonable efforts to determine the current address of such holder, but no Distribution to such holder shall be made unless and until the Debtors have determined the then

current address of such holder, at which time such Distribution shall be made to such holder without interest; provided that any Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the Effective Date or the Distribution Date, whichever shall apply, and any entitlement of any holder of any Claim to such distributions shall be extinguished and forever barred.

(f)      Unless otherwise provided herein, all initial distributions and deliveries shall be made on the Effective Date.

(g)      At the close of business on the date of the Confirmation Hearing, the claims register shall be closed, and there shall be no further changes in the record holders of any Claims. The Debtors shall have no obligation to recognize any transfer of any Claims occurring after the date of the Confirmation Hearing; *provided, however,* that the foregoing will not be deemed to prohibit the sale or transfer of any Claim subsequent to the date of the Confirmation Hearing and prior to the Effective Date, if applicable.  The Debtors shall instead be entitled to recognize and deal for all purposes under the Plan with only those record holders as of the close of business on the date of the Confirmation Hearing.

### 6.04.    <u>Distributions Withheld for Disputed Claims</u>

**(a)      Establishment and Maintenance of Reserve**

On the initial distribution date and each subsequent distribution date, the Reorganized Debtors shall reserve from the Distributions to be made on such dates to the holders of Allowed Claims, an amount equal to One Hundred Percent (100%) of the Distributions to which holders of Disputed Claims would be entitled under the Plan as of such dates if such Disputed Claims were Allowed Claims in their Disputed Claim Amounts, or as estimated by the Debtors or the Court in accordance with Section 6.08 of the Plan (the "<u>Disputed Claims Reserve</u>").

**(b)      Property Held in Disputed Claims Reserve**

Cash in the Disputed Claims Reserve shall (together with all dividends or other accretions or distributions thereon) be held in trust by the Reorganized Debtors for the benefit of the potential recipients of such Cash and shall not constitute property of the Reorganized Debtors.  In the event the Court subsequently disallows a Disputed Claim, Cash and any other consideration in the Disputed Claims Reserve on account of such disallowed Disputed Claim, and any other consideration actually distributed on account of such Disputed Claim, shall vest in the Reorganized Debtors.

**(c)      Distributions Upon Allowance of Disputed Claims**

The holder of a Disputed Claim that becomes an Allowed Claim subsequent to the any Distribution Date shall receive distributions of Cash and any other consideration from the Disputed Claims Reserve from the Reorganized Debtors upon the subsequent distribution date following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order.  Such Distributions shall be made in accordance with the Plan.

**(d)**     **No Surplus Distributions to Holders of Allowed Claims**

To the extent that a Disputed Claim is not Allowed or becomes an Allowed Claim in an amount less than the Disputed Claim Amount, the excess of Cash and any other consideration in the Disputed Claims Reserve over the amount of Cash and any other consideration actually distributed on account of such Disputed Claim shall vest in the Reorganized Debtors.

**(e)**     **Expenses of Disputed Claims Reserve**

Except as otherwise ordered by the Court, the amount of any reasonable expenses incurred by the Reorganized Debtors on or after the Effective Date with respect to the Disputed Claims Reserve shall be paid by the Reorganized Debtors.

**6.05.**     **Procedures for Allowance or Disallowance of Disputed Claims and Related Deadlines**

**(a)**     **Objections to and Resolution of Claims, Administrative Claims and General Unsecured Claims**

Any and all objections to any claim must be filed by the deadline set by the Court (the "Objection Deadline"), or with respect to rejection claims, within five (5) days of their filing (the "Objection to Rejection Claims Deadline").  In the event that the Debtors settle any claim objection, the Debtors may seek approval by submitting an Agreed Order in a form acceptable to the Debtors and the holder of the Disputed Claim.  In the event that the Debtors and holder of a Disputed Claim do not reach a consensual resolution of the claim objection, then the Debtors will set the contested matter for hearing before the Bankruptcy Court and will provide all interested parties with notice of the date set.

If any distribution to a holder of an Allowed Claim remains unclaimed for a period of ninety (90) days after such distribution has been delivered to the holder the Allowed Claim, the amount of the Claim upon which such distribution was made shall be canceled and said claimant shall not be entitled to any further distributions hereunder.  A distribution of funds is unclaimed, if, without limitation, the holder of a Allowed Claim does not cash a check, returns a check or if the check mailed to the holder at the address set forth in the Schedules, the Amended Schedules or set forth in a proof of claim filed by such holder is returned by the United States Postal Service or any other country's postal service as undeliverable.

Except as to applications for allowance of compensation and reimbursement of expenses under sections 330 and 503 of the Code, the Debtors or the Reorganized Debtors shall have the exclusive right to make and file objections to Administrative Claims and General Unsecured Claims subsequent to the Effective Date.  All objections shall be litigated to Final Order; *provided, however*, that following the Effective Date, the Reorganized Debtors shall have the authority to compromise, settle, otherwise resolve or withdraw any of their objections without approval of the Court.  Unless otherwise ordered by the Court, the Debtors or the Reorganized Debtors shall file all objections to Claims and serve such objections upon the holder of the Claim as to which the objection is made as soon as is practicable, but in no event later than one hundred twenty (120) days after the Effective Date or such later date as may be approved by the Court.

The Debtors or the Reorganized Debtors reserves the right to object to Administrative Claims as such claims arise in the ordinary course of business. The Reorganized Debtors shall bear all costs and expenses relating to the investigation and prosecution of Disputed Claims from and after the Effective Date.

Subject to applicable law, from and after the Effective Date, the Debtors will have the authority to file, settle, compromise, withdraw, arbitrate or litigate to judgment objections to Claims pursuant to applicable procedures established by the Bankruptcy Code, the Bankruptcy Rules and the Plan. Any and all objections to any claim must by filed prior to the Objection Deadline, or as otherwise ordered by the Court, or with respect to rejection claims, prior to the Objection to Rejection Claims Deadline.

An Objection to the allowance of a Claim or Interest will be in writing and may be filed with the Bankruptcy Court by the Debtors, at any time on or before the Claim Objection Deadline. The failure by Debtors to object to any Claim or Interest for voting purposes will not be deemed a waiver of Debtor's right to object to, or re-examine, any such Claim in whole or in part.

**ANY CLAIM ARISING FROM THE REJECTION OF AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT ARE NOT FILED WITHIN THE TIMES SET FORTH HEREIN WILL BE AUTOMATICALLY DISALLOWED, FOREVER BARRED FROM ASSERTION, AND SHALL NOT BE ENFORCEABLE AGAINST, AS APPLICABLE, THE DEBTORS, THE REORGANIZED DEBTORS, THE ESTATES, OR PROPERTY OF THE FOREGOING PARTIES, WITHOUT THE NEED FOR ANY OBJECTION BY THE DEBTORS OR THE REORGANIZED DEBTORS, AS APPLICABLE, OR FURTHER NOTICE TO, OR ACTION, ORDER, OR APPROVAL OF THE COURT OR ANY OTHER ENTITY, AND ANY CLAIM ARISING OUT OF THE REJECTION OF THE EXECUTORY CONTRACT OR UNEXPIRED LEASE SHALL BE DEEMED FULLY SATISFIED, RELEASED, AND DISCHARGED.**

**(b)    No Distribution Pending Allowance**

Notwithstanding any other provision of the Plan, if any portion of a Claim is disputed, the full amount of such Claim shall be treated as a Disputed Claim for purposes of this Plan, and no payment or Distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim or Allowed Equity Interest (in whole or in part).

**(c)    Disallowed Claims**

All Claims held by Persons against whom the Debtors or Disbursing Agent has commenced an Action under sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Code, shall be deemed "disallowed" Claims pursuant to section 502(d) of the Code and holders of such Claims shall not be entitled to vote to accept or reject the Plan. Claims that are deemed disallowed pursuant Section 6.05(c) of the Plan shall continue to be disallowed for all purposes until the Avoidance Action against such party has been settled or resolved by Final Order and any sums due to the Estate from such party have been paid.

### 6.06.  Disbursing Agent

The Reorganized Debtors, or such Person(s) as the Reorganized Debtors may designate with approval of the Court, will act as Disbursing Agent under the Plan with respect to all Distributions to holders of Claims and Equity Interests, and will make all Distributions required to be distributed under the applicable provisions of the Plan.  Any Disbursing Agent may employ or contract with other entities to assist in or make the Distributions required by the Plan.  Each Disbursing Agent will serve without bond, and each Disbursing Agent, other than the Reorganized Debtors, will receive, without further Court approval, reasonable compensation for distribution services rendered pursuant to the Plan and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services from the Reorganized Debtors on terms acceptable to the Reorganized Debtors.  The Reorganized Debtors shall hold all reserves and accounts pursuant to the Plan.

### 6.07.  Setoffs and Recoupment

The Debtors may, but shall not be required to, set off (pursuant to the provisions of sections 553 and 362 of the Code or other applicable law) against or recoup from any Claim or Equity Interest and the payments to be made pursuant to the Plan in respect of such Claim or Equity Interest, any Claims of any nature whatsoever that the Debtors may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any setoff or recoupment right they may have against the holder of such Claim or Equity Interest.

### 6.08.  Estimations of Claims

For purposes of calculating and making Distributions under the Plan, the Debtors, or Reorganized Debtors, as applicable, and the holder of a Disputed Claim shall be entitled to estimate, in good faith and with due regard to litigation risks associated with Disputed Claims, the maximum dollar amount of Allowed and Disputed Claims, inclusive of contingent and/or unliquidated Claims in a particular Class.  The Debtors, Reorganized Debtors and holder of a Disputed Claim may at any time request that the Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Code or otherwise regardless of whether the Debtors or Reorganized Debtors previously objected to such Claim or whether the Court has ruled on any such objection, and the Court will retain jurisdiction to estimate any Claim at any time during litigation concerning such objection to any claim, including without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Court estimates any contingent or unliquidated claim, the amount so estimated shall constitute either the Allowed Amount of such Claim or a maximum limitation on the amount of such Claim, as determined by the Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors or the Reorganized Debtors may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Court.

**6.09.    No Recourse**

Notwithstanding that the Allowed Amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Code and Rules or is Allowed in an amount for which after application of the payment priorities established by the Plan there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claim holder shall have recourse against the Disbursing Agent, the Debtors, the Reorganized Debtors, or any of their respective professionals, consultants, officers, directors or Affiliates or their respective successors or assigns, or any of their respective property. However, nothing in the Plan shall modify any right of a holder of a Claim under section 502(j) of the Code.   THE ESTIMATION OF CLAIMS AND ESTABLISHMENT OF RESERVES UNDER THE PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.

**6.10.    Amendments to Claims**

A Claim may be amended prior to the Confirmation Date only as agreed upon by the Debtors and the holder of such Claim, or as otherwise permitted by the Court, the Rules or applicable law.   After the Confirmation Date, a Claim may not be amended without the authorization of the Court.  Any amendment to a Claim filed after the Confirmation Date shall be deemed disallowed in full and expunged without any action by the Debtors, the Reorganized Debtors or the Estate, unless the Claim holder has obtained prior Court authorization for the filing of such amendment.

**6.11.    Postpetition Interest on Claims**

Unless expressly provided in the Plan, the Confirmation Order, or any contract, instrument, release, settlement, or other agreement entered into in connection with the Plan or required by applicable law, post-petition interest shall not accrue on or after the Petition Date on account of any Claim.

**6.12.    Unclaimed Funds**

Any funds unclaimed for the period described in paragraph 6.03(e) above shall be forfeited by the holder and will be re-deposited in the Disbursing Agent's account to be paid over to the Court pursuant to Local Rule 3011-1(B).

**ARTICLE VII**

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**7.01.    Assumption or Rejection of Executory Contracts and Unexpired Leases**

**(a)    Executory Contracts and Unexpired Leases**

The Code grants the Debtors the power, subject to the approval of the Court, to assume or reject executory contracts and unexpired leases.  If an executory contract or unexpired lease is rejected, the other party to the agreement may file a claim for damages incurred by reason of the rejection.  In the case of rejection of leases of real property, such damage claims are subject to certain limitations imposed by the Code.

The Debtors will assume Enclave at Hillsboro, LLC's submerged land lease with the Florida Department of Environmental Protection.  The Debtors do not believe that any cure payment will be due for the assumption of such lease.

Pursuant to sections 365(a) and 1123(b)(2) of the Code, all executory contracts and unexpired leases between the Debtors and any Person shall be deemed <u>rejected</u> by the Reorganized Debtors as of the Effective Date, <u>except</u> for any executory contract or unexpired lease (i) which previously has been assumed or rejected pursuant to an order of the Court entered prior to the Effective Date, (ii) as to which a motion for approval of the assumption or rejection of such executory contract or unexpired lease has been filed and served prior to the Effective Date or (iii) which is set forth herein or listed on the Assumption List which shall be filed with the Court and served on the affected parties by no later than twenty (20) days prior to the balloting deadline; *provided, however*, that the Debtors or Reorganized Debtors shall have the right, on or prior to the Confirmation Date, to amend the Assumption List to delete any executory contract or unexpired lease therefrom or add any executory contract or unexpired lease thereto, in which event such executory contract(s) or unexpired lease(s) shall be deemed, respectively, assumed or rejected.  The Debtors or Reorganized Debtors shall provide notice of any amendments to the Assumption List to the non-debtor parties to the executory contracts and unexpired leases affected thereby.  The listing of a document herein or on the Assumption List shall not constitute an admission by the Debtors or Reorganized Debtors that such document is an executory contract or an unexpired lease or that the Debtors or Reorganized Debtors have any liability thereunder.

**(b)      Schedules of Assumed Executory Contracts and Unexpired Leases; Inclusiveness**

Each executory contract and unexpired lease listed or to be listed on the Assumption List that relates to the use or occupancy of real property shall be deemed to include (i) all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed on the Assumption List and (ii) all executory contracts or unexpired leases appurtenant to the premises listed on the Assumption List, including, without limitation, all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vault, tunnel or bridge agreements or franchises, and any other interests in real estate or rights <u>in rem</u> relating to such premises, unless any of the foregoing agreements previously have been assumed.

(c)     **Insurance Policies**

Each of the Debtors' insurance policies and any agreements, documents or instruments relating thereto, including without limitation, any retrospective premium rating plans relating to such policies, shall be treated as executory contracts under the Plan. Notwithstanding the foregoing, distributions under the Plan to any holder of a Claim covered by any insurance policies and related agreements, documents or instruments that are assumed hereunder, shall comply with the treatment provided under the Plan. Nothing contained in the Plan shall constitute or be deemed a waiver or release of any Action that the Debtors may hold against any entity, including, without limitation, the insurers under any of the Debtor's policies of insurance.

(d)     **Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases**

Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute (i) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Code, of the assumption of the executory contracts and unexpired leases assumed pursuant to Article VII of the Plan, and (ii) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to the Plan.

**7.02.    Cure of Defaults**

To the extent that cure payments are due with respect to an executory contract or unexpired lease to be assumed pursuant to the Plan, the amount of such cure payment shall be listed in the Plan Supplement. To the extent that the non-debtor party to any executory contract or unexpired lease disagrees with the cure amount listed in the Plan Supplement, such party must file a notice of dispute with the Court and serve such notice on the Debtors by no later than five (5) days prior to the Confirmation Hearing. Except as may otherwise be agreed to by the parties or provided herein, within ninety (90) days after the Effective Date, the Reorganized Debtors shall cure any and all undisputed defaults under any executory contract or unexpired lease assumed pursuant to the Plan in accordance with section 365(b)(1) of the Code. Except as otherwise provided herein, all disputed defaults that are required to be cured shall be cured either within ninety (90) days of the entry of a Final Order determining the amount, if any, of the Debtors' or Reorganized Debtors' liability with respect thereto, or as may otherwise be agreed to by the parties. If there are any objections filed, the Court shall hold a hearing. In the event the Court determines that the cure amount is greater than the cure amount listed by the Debtors, the Reorganized Debtors may elect to reject the contract or unexpired lease and not pay such greater cure amount. To the extent there are any unexpired leases under which the Debtors are the lessor, the Debtors intend to assume such leases and do not believe there are any defaults to be cured.

**7.03.    Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan**

Claims arising out of the rejection of an executory contract or unexpired lease pursuant to the Plan must be filed with the Court and/or served upon the Debtors or Reorganized Debtors or as otherwise may be provided in the Confirmation Order, by no later than thirty (30) days after

the later of (i) notice of entry of an order approving the rejection of such executory contract or unexpired lease, (ii) notice of entry of the Confirmation Order and (iii) notice of an amendment to the Assumption List.  Any Claim not filed within such time will be forever barred from assertion against the Debtors, their Estate, the Reorganized Debtors and their property.  Unless otherwise ordered by the Court, all Claims arising from the rejection of executory contracts and unexpired leases shall be treated as Unsecured Claims under the Plan.

**7.04.  Indemnification Obligations**

For purposes of the Plan, the obligations of the Debtors to defend, indemnify, reimburse, or limit the liability against any claims or obligations of its present and former directors, officers or employees who served as directors, officers and employees, respectively, on or after the Petition Date, pursuant to the Debtor's certificate of incorporation or bylaws, applicable state law or specific agreement, or any combination of the foregoing, shall survive confirmation of the Plan, remain unaffected thereby, and not be discharged, irrespective of whether indemnification, defense, reimbursement or limitation is owed in connection with an event occurring before, on or after the Commencement Date.

## ARTICLE VIII

## MEANS FOR IMPLEMENTATION
## AND EFFECT OF CONFIRMATION OF PLAN

**8.01.  General**

Upon confirmation of the Plan, and in accordance with the Confirmation Order, the Debtors or Reorganized Debtors will be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan.  In addition to the provisions set forth elsewhere in the Plan, the following shall constitute the means for implementation of the Plan.

**8.02.  Continued Limited Liability Company Existence**

Except as otherwise provided in the Plan, the Debtors shall continue to exist after the Effective Date with all powers of a limited liability company, pursuant to the applicable law in the jurisdiction in which the Debtors are formed and pursuant to the respective certificate of incorporation and bylaws in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval.

**8.03.  The Reorganized Debtors**

Except as otherwise provided in the Plan and the Confirmation Order, on the Effective Date, the Reorganized Debtors shall be vested with all of the property of the Estate free and clear of all Claims, liens, encumbrances, charges, and other interests, including but not limited to that of holders of Claims and holders of Equity Interests.  The Reorganized Debtors shall assume all of the Debtors' rights, obligations and liabilities under the Plan.

**8.04.    Effectiveness of Securities, Instruments and Agreements**

On the Effective Date, all documents described in the Plan Supplement and all other agreements entered into or documents issued pursuant to the Plan and/or any agreement entered into or instrument or document issued in connection with any of the foregoing, as applicable, shall become effective and binding upon the parties thereto in accordance with their respective terms and conditions and shall be deemed to become effective simultaneously.

**8.05.    Limited Liability Company Action**

On the Effective Date, all matters provided for under the Plan and contemplated by the Plan that would otherwise require approval of the stockholders, directors or members of the Debtors or Reorganized Debtors or their successors in interest under the Plan, including, without limitation, the authorization to issue or cause to be issued the new common stock and documents relating thereto, the adoption of the Reorganized Debtor's Certificate of Incorporation, the Reorganized Debtors' Bylaws, and the election or appointment, as the case may be, of directors and officers of the Debtors pursuant to the Plan, shall be deemed to have occurred and shall be in full force and effect from and after the Effective Date pursuant to the applicable General Corporation Law, without any requirement of further action by the stockholders or directors of the Debtors or Reorganized Debtors.

**8.06.    Approval of Agreements**

Entry of the Confirmation Order shall constitute approval of the Plan Documents and all such transactions, subject to the occurrence of the Effective Date.

**8.07.    No Change of Control**

Except as provided in the Plan and Confirmation Order, any acceleration, vesting or similar change of control rights of any Person under employment, benefit or other arrangements with the Debtors that could otherwise be triggered by the entry of the Confirmation Order or the consummation of the Plan or any of the transactions contemplated thereby shall be deemed to be waived and of no force or effect.

**8.08.    Administration After Effective Date**

After the Effective Date, the Reorganized Debtors may operate their business, and may use, acquire, and dispose of their property, free of any restrictions of the Code and Rules.

**8.09.    Term of Bankruptcy Injunction or Stays**

All injunctions or stays provided for in the Case under sections 105 or 362 of the Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

### 8.10.    Vesting of Assets

Except as otherwise provided in the Plan, pursuant to section 1141 of the Code, the property of the Estate of the Debtors, including, without limitation, the Actions shall revest in the Reorganized Debtors on the Effective Date, free and clear of all Liens, Claims and interests of holders of Claims and Equity Interests, except as otherwise provided in the Plan or the Confirmation Order.

### 8.11.    Causes of Action

As of the Effective Date, pursuant to section 1123(b)(3)(B) of the Code, any and all Actions accruing to the Debtors and Debtors in Possession, including, without limitation, actions under sections 510, 542, 544, 545, 547, 548, 549, 550, 551 and 553 of the Code, shall become assets of the Debtors and/or the Disbursing Agent, as the case may be, shall have the authority to commence and prosecute such Actions for the benefit of the Estate.  Specifically, the Debtors shall continue to prosecute any Action pending on the Effective Date.

After the Effective Date, the Reorganized Debtors shall have the authority to compromise and settle, otherwise resolve, discontinue, abandon or dismiss all such Actions with the approval of the Court. Prior to Confirmation, the Debtors shall file a schedule of potential Avoidance Actions, if any.

### 8.12.    Discharge of Debtors

Except as otherwise provided herein or in the Confirmation Order, the rights afforded herein and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction, discharge and release of Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Commencement Date, against the Debtors and the Debtors in Possession, the Estates, any of the assets or properties under the Plan.  Except as otherwise provided herein, (i) on the Effective Date, all such Claims against the Debtors, and Equity Interest in the Debtors shall be satisfied, discharged and released in full, and (ii) all Persons shall be precluded and enjoined from asserting against the Reorganized Debtors, their successors, their assets or properties, any other or further Claims or Equity Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not such holder has filed a proof of claim or proof of equity interest and whether or not such holder has voted to accept or reject the Plan.  Notwithstanding the foregoing, nothing in the Plan shall release, discharge, enjoin or preclude any Claim that has not arisen as of the Effective Date that any governmental unit may have against the Debtors and nothing in the Plan shall release, nullify or enjoin the enforcement of any liability to a governmental unit under environmental statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of the Confirmation Order.

### 8.13.    Injunction Related to Discharge

*Except as otherwise expressly provided in the Plan or the Confirmation Order, all Persons who have held, hold or may hold Claims against the Debtors, or hold or may hold*

*Equity Interests in the Debtors, are permanently enjoined, on and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Equity Interest, (ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against the Debtors, on account of any such Claim or Equity Interest, (iii) creating, perfecting or enforcing any Lien or asserting control of any kind against the Debtors or against the property or interests in property of the Debtors on account of any such Claim or Equity Interest, and (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors or against the property or interests in property of the Debtors on account of any such Claim or Equity Interest.  Such injunctions shall extend to successors of the Debtors (including, without limitation, the Reorganized Debtor) and their respective properties and interests in property.*

### 8.14.  Release by Holders of Impaired Claims

*The Plan, and the provisions and distributions set forth therein, is a full and final settlement and compromise of all Claims and causes of action, whether known or unknown, that holders of Claims against the Debtors, and holders of Equity Interests in the Debtors, may have against the Debtors.  In consideration of the obligations of the Debtors and the Reorganized Debtors, under this Plan, the securities, contracts, instruments, releases and other agreements or documents to be delivered in connection with this Plan, each holder of a Claim against the Debtors, or Equity Interest in the Debtors, shall be deemed to forever release, waive and discharge all Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities (other than the rights to enforce the Debtors' or the Reorganized Debtors' obligations under this Plan and the securities, contracts, instruments, releases and other agreements and documents delivered thereunder) whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Chapter 11 case or the conduct thereof, or the Plan.  Notwithstanding the foregoing, nothing in this paragraph, the Plan, or the Confirmation Order shall release any Claim or causes of action for gross negligence or willful misconduct.*

### 8.15.  Injunction Against Interference with the Plan

*Upon the entry of a Confirmation Order with respect to the Plan, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan, except with respect to actions any such entity may take in connection with the pursuit of appellate rights.*

### 8.16.  Votes Solicited in Good Faith

The Debtors have, and upon confirmation of the Plan shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and on account of such solicitation will not, be liable at any time for the

violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.

### 8.17. Payments Within 90 Days of Filing

The Debtors have made no payments within ninety (90) days prior to the Petition Date.

## ARTICLE IX

## CONFIRMATION AND EFFECTIVENESS OF THE PLAN

### 9.01. Conditions Precedent to Effective Date

The Plan shall not be consummated, and the Effective Date shall not occur, unless and until the following conditions have occurred or been duly waived:

(i)    The Court shall have approved the information contained in the Disclosure Statement as adequate;

(ii)    The Confirmation Order shall be in form and substance reasonably acceptable to the Debtors and include, among other things, a finding of fact that the Debtors, the Reorganized Debtors, and its respective present and former members, officers, directors, employees, advisors, attorneys, and agents acted in good faith within the meaning of and with respect to all of the actions described in section 1125(e) of the Code and are, therefore, not liable for the violation of any applicable law, rule or regulation governing such actions;

(iii)    The Confirmation Order shall have been entered and shall be a Final Order (with no modification or amendment thereof), and there shall be no stay or injunction that would prevent the occurrence of the Effective Date;

(iv)    All conditions precedent to the obligations of the Debtors and the Disbursing Agent have occurred;

(v)    The Court shall have entered an order (contemplated to be part of the Confirmation Order) authorizing and directing the Debtors to take all actions necessary or appropriate to enter into, implement, and consummate the documents created, amended, supplemented, modified or adopted in connection with the Plan;

(vi)    All other actions, authorizations, filings consents and regulatory approvals required (if any) shall have been obtained, effected or executed in a manner acceptable to the Debtors and remain in full force and effect or, if waivable, waived by the Person or Persons entitled to the benefit thereof;

(vii)    No order of a court shall have been entered and shall remain in effect restraining the Debtors from consummating the Plan;

(viii)    The statutory fees owing to the United States Trustee shall have been paid in full; and

(ix)    The closing of the Sale(s) or Financing shall have occurred under the terms of the Plan.

**9.02.    <u>Effect of Failure of Conditions</u>**

If the Confirmation Order is vacated, the Plan shall be deemed null and void in all respects, including without limitation the discharge of Claims pursuant to section 1141 of the Code and the assumptions or rejections of executory contracts and unexpired leases as provided by the Plan, and nothing contained herein shall (1) constitute a waiver or release of any Action by, or Claims against, the Debtors or (2) prejudice in any manner the rights of the Debtors.

**9.03.    <u>Waiver of Conditions</u>**

The Debtors may waive one or more of the conditions precedent to confirmation of the Plan, or the condition precedent to effectiveness of the Plan set forth in Section 9.01 of the Plan.

**ARTICLE X**

**<u>RETENTION OF JURISDICTION</u>**

The Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Case and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Code and for, among other things, the following purposes:

(a)    To hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, if any are pending, and the allowance of Claims resulting therefrom;

(b)    To determine any and all adversary proceedings, motions, applications and contested matters, and other litigated matters pending on the Confirmation Date;

(c)    To hear and determine all Actions, including, without limitation, Actions commenced by the Debtors or any other party in interest with standing to do so, pursuant to sections 505, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Code, collection matters related thereto, and settlements thereof;

(d)    To hear and determine any objections to or the allowance, classification, priority, compromise, estimation or payments of any Administrative Claims, Claims or Equity Interests;

(e)    To ensure that Distributions to holders of Allowed Claims are accomplished as provided in the Plan;

(f)    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(g)    To issue such orders in aid of execution and consummation of the Plan, to the extent authorized by section 1142 of the Code;

(h)      To consider any amendments to or modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in the Plan, the Plan Supplement, or any order of the Court, including, without limitation, the Confirmation Order;

(i)      To hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 330, 331, and 503(b) of the Code;

(j)      To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

(k)      To recover all Assets of the Debtors and Property of the Estate, wherever located;

(l)      To determine any Claim of or any liability to a governmental unit that may be asserted as a result of the transactions contemplated herein;

(m)      To enforce the Plan, the Confirmation Order and any other order, judgment, injunction or ruling entered or made in the Case, including, without limitation, the discharge, injunction, exculpation and releases provided for in the Plan;

(n)      To take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation;

(o)      To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Code (including, but not limited to, an expedited determination under section 505(b) of the Code of the tax liability of the Debtors for all taxable periods through the Effective Date for all taxable periods of the Debtors through the liquidation and dissolution of such entity);

(p)      To enter and implement orders and to take such other actions as may be necessary or appropriate to restrain interference by any Person or entity with the consummation or implementation of the Plan, including, without limitation, to issue, administer, and enforce injunctions, releases, assignments, or indemnity obligations contained in the Plan and the Confirmation Order;

(q)      To hear any other matter not inconsistent with the Code; and

(r)      To enter a final decree closing the Case; *provided however*, that nothing in the Plan shall divest or deprive any other court or agency of any jurisdiction it may have over the Reorganized Debtors under applicable environmental laws.

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

### 11.01.  Effectuating Documents and Further Transactions

The Debtors or Reorganized Debtors, as the case may be, are authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to implement, effectuate and further evidence the terms and conditions of the Plan and any notes or securities issued pursuant to the Plan.

### 11.02. Exemption from Transfer Taxes

Pursuant to section 1146(a) of the Code, the issuance, transfer or exchange of notes or equity securities under the Plan, including new common stock, creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, in connection with a transfer, or sale, including but not limited to the Case(s) and Financing, in furtherance of, or in connection with any agreements, deeds, bills of sale or assignments, or any other documents executed in connection with any of the transactions contemplated by the Plan, Sale(s), and Financing, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

### 11.03. Authorization to Request Prompt Tax Determinations

The Reorganized Debtors are authorized to request an expedited determination under section 505(b) of the Code of the tax liability of the Debtors, for all taxable periods through the Effective Date.

### 11.04. Exculpation

Subject to the occurrence of the Effective Date, neither the Debtors nor the Reorganized Debtors, or any of their respective members, officers, directors, agents, financial advisors, attorneys, employees, equity holders, partners, affiliates and representatives (the "Exculpated Parties") shall have or incur any liability to any holder of a Claim or Equity Interest for any act or omission in connection with, related to, or arising out of, the Cases, the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan; *provided, however,* that the foregoing shall not operate as a waiver or release for (i) any express contractual obligation owing by any such Person, (ii) willful misconduct or gross negligence, and (iii) with respect to Professionals, liability arising from claims of professional negligence which shall be governed by the standard of care otherwise applicable to professional negligence claims under applicable non-bankruptcy law, and, in all respects, the Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan; *provided further* that nothing in the Plan shall, or shall be deemed to, release the Exculpated Parties, or exculpate the Exculpated Parties with respect to, their respective obligations or covenants arising pursuant to the Plan; *provided further* that the foregoing shall not operate as a waiver or release of Claims by governmental entities arising under environmental laws.

### 11.05. Injunction Relating to Exculpation

The Confirmation Order will contain an injunction, effective on the Effective Date, permanently enjoining the commencement or prosecution by the Debtors, the Reorganized

Debtors and any other Person, whether derivatively or otherwise, of any Action or causes of action exculpated, released or discharged pursuant to this Plan against the Exculpated Parties.

### 11.06.   Post-Effective Date Fees and Expenses

From and after the Effective Date, the Reorganized Debtors shall, in the ordinary course of business and without the necessity for any approval by the Court, pay the reasonable fees and expenses of Professionals thereafter incurred by the Reorganized Debtors, including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

### 11.07.   Payment of Statutory Fees

The Reorganized Debtors shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6).  After confirmation, the Reorganized Debtors shall file with the Court and serve on the United States Trustee a quarterly financial report regarding all income and disbursements, including all plan payments, for each quarter (or portion thereof) the Case remains open.

### 11.08.   Amendment or Modification of Plan

Alterations, amendments or modifications of the Plan may be proposed in writing by the Debtors at any time prior to the Confirmation Date in conformity with section 1127(a) of the Code, provided that the Plan, as altered, amended or modified, satisfies the conditions of sections 1122, 1123 and 1129 of the Code, and the Debtors shall have complied with section 1125 of the Code.  The Plan may be altered, amended or modified by the Debtors at any time after the Confirmation Date in conformity with section 1127(b) of the Code, provided that the Plan, as altered, amended or modified, satisfies the requirements of sections 1122 and 1123 of the Code and the Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under section 1129 of the Code and the circumstances warrant such alterations, amendments or modifications.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

Prior to the Effective Date, the Debtors, and without the approval of the Bankruptcy Court, and without notice to all holders of Claims and Interests, insofar as it does not materially adversely affect the interests of holders of Claims and Interests, may correct any defect, omission or inconsistency in this Plan in such manner and to such extent as may be necessary to expedite the execution of this Plan.

### 11.09.   Severability

In the event that the Court determines, prior to the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the holder or holders of such Claims or Equity Interests as to which the provision is determined to be invalid, void or unenforceable.  The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.  The Court, at the request of the Debtor, shall

have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 11.10.  Revocation or Withdrawal of the Plan

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtors revokes or withdraws the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Actions by or against the Debtors or any other Person, an admission against interests of the Debtor, nor shall it prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors.

### 11.11.  Binding Effect Notices

The Plan shall be binding upon and inure to the benefit of the Debtors, the holders of Claims and Equity Interests, and their respective successors and assigns, including, without limitation, the Reorganized Debtor.

### 11.12.  Notices

All notices, requests and demands to or upon the Debtors or the Reorganized Debtors to be effective shall be in writing and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed. Notices shall be sent or delivered to the following:

**To the Reorganized Debtors:**

> Lake Placid Waterfront Properties, LLC
> Hillsboro Mile Properties, LLC
> Enclave at Boynton Waters Properties, LLC
> Estates of Boynton Waters Properties, LLC
> Enclave at Hillsboro, LLC
> Remi Hillsboro LLC
> Antipodean Properties, LLC
> Kerekes Land Trust Properties, LLC
> c/o John B. Kennelly
> 333 Key Palm Road
> Boca Raton, FL 33432

**With a copy to:**

> Shraiberg, Ferrara & Landau

Attorneys for the Debtors
2385 N.W. Executive Center Drive, Suite 300
Boca Raton, Florida 33431
Phone: (561) 443-0800/Fax: (561) 998-0047
Attn: Bradley S. Shraiberg

### 11.13.  Governing Law

Except to the extent the Code, Rules or other federal law is applicable, or to the extent the Plan or any agreement entered into pursuant to the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflicts of law of such jurisdiction.

### 11.14.  Withholding and Reporting Requirements

In connection with the consummation of the Plan, the Debtors or the Reorganized Debtors, as the case may be, shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

### 11.15.  Section 1125(e) of the Code

As of the Confirmation Date, the Debtors shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Code.  As of the Confirmation Date, the Debtors and its respective members, officers, directors, agents, financial advisors, attorneys, employees, equity holders, partners, Affiliates and representatives shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Code in the offer and issuance of the new securities hereunder, and therefore are not, and on account of such offer, issuance and solicitation shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections hereof or other offer and issuance of new securities under the Plan.

### 11.16.  Filing of Additional Documents

On or before Substantial Consummation of the Plan, the Debtors shall file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### 11.17.  No Admissions

Notwithstanding anything in the Plan to the contrary, nothing contained in the Plan shall be deemed as an admission by any Person with respect to any matter set forth in the Plan or herein.

**11.18.  Waiver of Bankruptcy Rule 3020(e) and 7062**

The Debtors may request that the Confirmation Order include (a) a finding that Rules 3020(e) and 7062 shall not apply to the Confirmation Order; and (b) authorization for the Debtors to consummate the Plan immediately after entry of the Confirmation Order.

**11.19.  Time**

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Court, the provisions of Rule 9006 shall apply.

**11.20.  Substantial Consummation**

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Code.

**11.21.  Final Decree**

Once there has been Substantial Consummation of the Plan, the Reorganized Debtors shall file a motion with the Court to obtain a final decree to close the Case.

**11.22.  Inconsistency**

In the event of any inconsistency between the Plan and any Exhibit to the Plan or any other instrument or document created or executed pursuant to the Plan, the Plan shall govern.  In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall govern.

**11.23.  No Interest or Attorneys' Fees**

Except as otherwise provided under the Plan, or as ordered by the Court, no interest, penalty or other charge, including any late charge, arising from and after the Petition Date, and no award or reimbursement of any attorneys' fees or other related cost or disbursement, shall be allowed on, or in connection with, any Claim, unless otherwise provided under the Plan or awarded by the Court.

**11.24.  Successors and Assigns**

This Plan and all the provisions hereof shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

**11.25.  Headings**

The headings of articles, paragraphs and sub-paragraphs in this Plan are inserted for convenience only and shall not affect the interpretation of any provision of this Plan.

**11.26.  No Penalty for Prepayment**

Neither the Debtors nor the Reorganized Debtors shall be liable for payment of any sum or interest in the form of a penalty relating to the prepayment of any claim treated under this Plan.

**11.27.  Savings Clause**

Any minor defect or inconsistency in the Plan may be corrected or amended by the Confirmation Order.

**11.28.  Remedy of Defects**

After the Effective Date, the Reorganized Debtors may, with approval of the Court, and so long as it does not materially and adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of the Plan and in form and substance satisfactory to the Reorganized Debtors.

### ARTICLE XII

### CONCLUSION

The aforesaid provisions shall constitute the Plan of Reorganization of the Debtors.  This Plan, when approved and confirmed by the Court, shall be deemed binding on the Debtors, the Reorganized Debtors, and all creditors and all parties in interest and their successors and assigns in accordance with section 1141 of the Bankruptcy Code.

**DATED: March 7, 2016**

**DEBTORS-IN-POSSESSION:**

By: _____
John B. Kennelly, on behalf of the Debtors

## ATTORNEY CERTIFICATION

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was sent to those parties as listed on the Court's Case Management / Electronic Case Filing, this the 7th day of March, 2016.

**Respectfully submitted,**

Bradley S. Shraiberg
Bernice C. Lee
SHRAIBERG, FERRARA & LANDAU, P.A.
2385 NW Executive Center Drive, Ste. 300
Boca Raton, FL 33431
Telephone: (561) 443-0800
Facsimile: (561) 998-0047
Email: bshraiberg@sfl-pa.com
Email: blee@sfl-pa.com

By:  /s/ Bradley S. Shraiberg
        Bradley S. Shraiberg
        Florida Bar. No. 121622
        Bernice C. Lee, Esq.
        Florida Bar No. 73535