UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM DIVISION

In re:

Enclave at Hillsboro, LLC, et al.,                     Chapter 11

Case No.: 15-26155-EPK
Case No.: 15-26148-EPK
Case No.: 15-26162-EPK
Case No.: 15-26156-EPK
Case No.: 15-26165-EPK
Case No.: 15-26152-EPK
Case No.: 15-26141-EPK
Case No.; 15-26143-EPK

(jointly administered)

                    Debtors.
_____/

## DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF REORGANIZATION

March 7, 2016

Bradley S. Shraiberg
Bernice C. Lee
SHRAIBERG, FERRARA & LANDAU, P.A.
2385 NW Executive Center Drive, Ste. 300
Boca Raton, FL 33431
Telephone: (561) 443-0800
Facsimile:  (561) 998-0047
Email: bshraiberg@sfl-pa.com
Email: blee@sfl-pa.com

**ATTORNEYS FOR THE DEBTOR**

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................1

     A.    Overview of the Plan ............................................................................3
     B.    Voting Instructions..............................................................................4

II.    BACKGROUND ....................................................................................................4

     A.    Background of Debtors and Their Managers........................................4
     B.    Commencement of Chapter 11 Case......................................................5
     C.    Substantive Consolidation ...................................................................5
     D.    Settlement with BI Boca ......................................................................6
     E.    Settlement with 13th Floor and Colony ...............................................6
     F.    The Sale or Refinancing.......................................................................6
     G.    Retained Professional..........................................................................7
     H.    The Claims Process..............................................................................7

III.   CHAPTER 11 PLAN .............................................................................................8

     A.    Plan Overview .....................................................................................8
     B.    Unclassified Claims .............................................................................8
          1.    Allowed Administrative Claims. ............................................8
          2.    Priority Tax Claims...............................................................8
          3.    United States Trustee's Fees ..................................................9
     C.    Treatment of Claims and Interests .......................................................9
          1.    Class 1.  Allowed Secured Taxing Authority Claims...............9
          2.    Class 2.  Allowed Lender Claim .............................................9
          3.    Class 3. Allowed Priority Unsecured Claims .........................12
          4.    Class 4.  Allowed General Unsecured Claims ........................12
          5.    Class 5.  Allowed Equity Interests .......................................12
     D.    Distributions Under the Plan...............................................................12
     E.    Objections to and Resolution of Claims, Administrative Claims
          and General Unsecured Claims and Distributions................................13
          1.    Unclaimed Funds ................................................................14
          2.    Establishment and Maintenance of Reserve .........................14
          3.    Distribution Upon Allowance of Disputed Claims.................15
     F.    Executory Contracts and Unexpired Leases ........................................15
          1.    Schedule of Assumed Executory Contracts and Unexpired
                 Leases; Invlusiveness.........................................................16
           2.    Insurance Policies ...............................................................16
           3.    Approval of Assumption or Rejection of Executory
                 Contracts and Unexpired Leases..........................................16
     G.    Amendment, Modification, Revocation and Withdrawal of the Plan....17
     H.    Effect of Confirmation........................................................................18
          1.    Continued Limited Liability Company Existence ...................18

|  |  | 2. | Vesting of Assets | ...................................................................18 |
| I. |  | Discharge, Exculpation, Injunction, Release and Limitation of Liability | .........................................................................................18 |
|  |  | 1. | Discharge of Debtors | ........................................................18 |
|  |  | 2. | Injunction Related to Discharge | .......................................19 |
|  |  | 3. | Release by Holders of Impaired Claims | .............................19 |
|  |  | 4. | Injunction Against Interference with the Plan | .................19 |
|  |  | 5. | Votes Solicited in Good Faith | ............................................20 |
|  |  | 6. | Term of Bankruptcy Injunction or Stay | ............................20 |
| J. |  | Retention of Jurisdiction | ...............................................................20 |
| K. |  | Payments Within 90 Days of Filing | ..............................................21 |

IV.    CONFIRMATION OF THE PLAN.............................................................21

A.    Solicitation of Votes ........................................................................21
B.    Confirmation Hearing ......................................................................22
C.    Confirmation Standards ...................................................................22

V.    Funding and feasibility of the Plan ............................................................23

A.    Funding of the Plan ..........................................................................23
B.    Risks to Creditors .............................................................................23
C.    Best Interests Test and Liquidation Analysis...................................23
D.    Feasibility.........................................................................................24

VI.    ALTERNATIVES TO THE PLAN ..............................................................25

1.    Liquidation Under Chapter 7 ...............................................25
2.    Alternative Plan of Reorganization......................................25
3.    Dismissal of the Chapter 11 Cases…………………………………25

CONCLUSION.............................................................................................................26

**EXHIBIT INDEX**

EXHIBIT A:          Chapter 11 Plan

EXHIBIT B:          Liquidation Analysis

EXHIBIT C:          Sources and Uses Statement

**DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF REORGANIZATION**

> THE DEBTOR RESERVES THE RIGHT TO AMEND OR SUPPLEMENT THIS PROPOSED DISCLOSURE STATEMENT AT OR BEFORE THE CONFIRMATION HEARING.

## I.     INTRODUCTION

Debtors in Possession, Enclave at Hillsboro, LLC, Hillsboro Mile Properties, LLC, Antipodean Properties, LLC, Remi Hillsboro, LLC, Kerekes Land Trust Properties, LLC, Estates of Boynton Waters Properties, LLC, Enclave at Boynton Waters Properties, LLC, and Lake Placid Waterfront Properties, LLC (collectively, the "Debtors" and individually, the "Debtor"), provide this Disclosure Statement (the "Disclosure Statement") to all of the Debtors' creditors and equity interest holders in order to permit such creditors and equity interest holders to make an informed decision in voting to accept or reject the Debtor's Plan of Reorganization (the "Plan") [ECF No. 85], which the Debtor filed on March 7, 2016 with the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") in connection with the above-captioned case (the "Chapter 11 Case"). A copy of the Plan is attached to hereto as **EXHIBIT A**. Whenever the words "include," "includes" or "including" are used in this Disclosure Statement, they are deemed to be followed by the words "without limitation."

The Disclosure Statement is presented to certain holders of Claims[1] against or Equity Interests in the Debtor in accordance with the requirements of section 1125 of the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"). Section 1125 of the Bankruptcy Code requires that a disclosure statement provide information sufficient to enable a hypothetical and reasonable investor, typical of the Debtor's creditors and stockholders, to make an informed judgment whether to accept or reject the Plan. The Disclosure Statement may not be relied upon for any purpose other than that described above.

**THE DISCLOSURE STATEMENT AND THE PLAN ARE AN INTEGRAL PACKAGE, AND THEY MUST BE CONSIDERED TOGETHER FOR THE READER TO BE ADEQUATELY INFORMED. THIS INTRODUCTION IS QUALIFIED IN ITS ENTIRETY BY THE REMAINING PORTIONS OF THIS DISCLOSURE STATEMENT, AND THIS DISCLOSURE STATEMENT IN TURN IS QUALIFIED, IN ITS ENTIRETY, BY THE PLAN. THE DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN. EACH CREDITOR AND STOCKHOLDER IS STRONGLY URGED TO REVIEW THE PLAN PRIOR TO VOTING ON IT.**

**NO REPRESENTATIONS CONCERNING THE DEBTORS (PARTICULARLY AS TO THE VALUE OF THEIR PROPERTY) ARE AUTHORIZED BY THE DEBTORS OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT AND ITS EXHIBITS. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE OF THE PLAN OTHER THAN AS CONTAINED IN THE DISCLOSURE STATEMENT AND ITS EXHIBITS SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL**

---

[1] Capitalized terms used herein but not otherwise defined have the meanings assigned to such terms in the Plan.

REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTORS, WHO WILL IN TURN DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT, INCLUDING ANY EXHIBITS CONCERNING THE FINANCIAL CONDITION OF THE DEBTORS AND THE OTHER INFORMATION CONTAINED HEREIN, HAS NOT BEEN SUBJECT TO AN AUDIT OR INDEPENDENT REVIEW EXCEPT AS EXPRESSLY SET FORTH HEREIN.  ACCORDINGLY, THE DEBTORS ARE UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONCERNING THE DEBTORS OR THEIR FINANCIAL CONDITION IS ACCURATE OR COMPLETE. THE PROJECTED INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PRESENTED FOR ILLUSTRATIVE PURPOSES ONLY, AND, BECAUSE OF THE UNCERTAINTY AND RISK FACTORS INVOLVED, THE DEBTOR'S ACTUAL RESULTS MAY NOT BE AS PROJECTED HEREIN.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE OF THE DISCLOSURE STATEMENT UNLESS ANOTHER TIME IS SPECIFIED.  THE DELIVERY OF THIS DISCLOSURE STATEMENT WILL NOT UNDER ANY CIRCUMSTANCES CREATE AN IMPLICATION THAT THERE HAS NOT BEEN ANY CHANGE IN THE FACTS SET FORTH SINCE THE DATE OF THE DISCLOSURE STATEMENT.

A STATEMENT OF THE ASSETS AND LIABILITIES OF THE DEBTORS, WHICH, UPON INFORMATION AND BELIEF WAS PREPARED BY THE DEBTORS, AS OF THE DATE OF THE COMMENCEMENT OF THE CHAPTER 11 CASE IS ON FILE WITH THE CLERK OF THE BANKRUPTCY COURT AND MAY BE INSPECTED BY INTERESTED PARTIES DURING REGULAR BUSINESS HOURS.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW.  ENTITIES HOLDING OR TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING CLAIMS AGAINST, INTERESTS IN OR SECURITIES OF, THE DEBTORS SHOULD EVALUATE THIS DISCLOSURE STATEMENT ONLY IN LIGHT OF THE PURPOSE FOR WHICH IT WAS PREPARED.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION NOR HAS SUCH COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

THIS DISCLOSURE STATEMENT WILL NOT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE PLAN. EACH CREDITOR SHOULD, THEREFORE, CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISERS AS TO ANY SUCH MATTERS

CONCERNING THE SOLICITATION, THE PLAN OR THE TRANSACTIONS CONTEMPLATED THEREBY.

Pursuant to the Bankruptcy Code, the Debtor filed the Plan with the Bankruptcy Court on March 7, 2016, 2016 and this disclosure statement was filed thereafter. The Bankruptcy Court will schedule a hearing to consider approval of this Disclosure Statement. Thereafter, the Bankruptcy Court will schedule a hearing to consider final approval of this Disclosure Statement, or an amendment thereto, and on confirmation of the Plan (the "Confirmation Hearing") to be held at the United States Bankruptcy Court for the Southern District of Florida, Flagler Waterview Building, 1515 North Flagler Drive, 8th Floor, West Palm Beach, Florida 33401. At the Confirmation Hearing, the Bankruptcy Court will consider whether this Disclosure Statement and the Plan satisfy the requirements of the Bankruptcy Code, including whether the Plan is in the best interests of the claimants.

To obtain, at your cost, additional copies of this Disclosure Statement or of the Plan, please contact Shraiberg, Ferrara & Landau, P.A., 2385 NW Executive Center Drive, Ste. 300, Boca Raton, FL 33431, Phone: (561) 443-0800, Facsimile: (561) 998-0047.

A.      Overview of the Plan

**THE FOLLOWING IS A BRIEF SUMMARY OF THE TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN. THE DESCRIPTION OF THE PLAN SET FORTH BELOW CONSTITUTES A SUMMARY ONLY AND IS QUALIFIED, IN ITS ENTIRETY, BY THE PLAN AND THE PLAN DOCUMENTS. CREDITORS AND OTHER PARTIES IN INTEREST ARE URGED TO REVIEW THE MORE DETAILED DESCRIPTION OF THE PLAN CONTAINED IN THIS DISCLOSURE STATEMENT AND THE PLAN ITSELF. THE PLAN IS ATTACHED AS EXHIBIT A TO THIS DISCLOSURE STATEMENT. IN THE EVENT OF ANY INCONSISTENCY BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN, THE PLAN CONTROLS.**

Chapter 11 is the chapter of the Bankruptcy Code primarily used for business reorganization. The fundamental purpose of a chapter 11 case is to formulate a plan to restructure a debtor's finances so as to maximize recoveries to its creditors. With this purpose in mind, businesses sometimes use chapter 11 as a means to conduct asset sales and other forms of liquidation. Whether the aim is reorganization or liquidation, a chapter 11 plan sets forth and governs the treatment and rights to be afforded to creditors and stockholders with respect to their claims against and equity interests in a debtor's bankruptcy estate.

The Plan divides the Claims against and Equity Interests in the Debtor into Classes. Certain Claims, in particular, Administrative Claims, remain unclassified in accordance with section 1123(a)(1) of the Bankruptcy Code. The Plan assigns all other Claims and Interests as described below and as defined in the Plan.

| Class | Description | Approximate Amount Asserted | Estimated Allowed Amounts | Estimated Recovery | Status |
|-------|-------------|-----------------------------|---------------------------|--------------------|--------|
| N/A | Administrative Claims | $150,000.00 (bankruptcy counsel) | $150,000.00 (bankruptcy counsel) | 100% | Unclassified and not entitled to vote |

| Class | Description | Approximate Amount Asserted | Estimated Allowed Amounts | Estimated Recovery | Status |
|---|---|---|---|---|---|
| 1 | Secured Taxing Authority Claims | $1,162,606.50 | $1,162,606.50 | 100% | Impaired |
| 2 | Lender Claim | $38,939,415.12 | $38,939,415.12 | 100% | Impaired |
| 3 | Priority Unsecured Claims | $44,122.87 | $44,122.87 | 100% | Impaired |
| 4 | General Unsecured Claims | $225,000.00-$2,226,950.74 | $275,000.00-$1,447,641.74 | 100% | Impaired |
| 5 | Equity Interests | Unknown | Unknown | Retains equity; 0% distribution | Impaired |

**B.     Voting Instructions**

The Bankruptcy Code entitles only holders of impaired claims or equity interests who receive some distribution under a proposed plan to vote to accept or reject that plan.  Claims in Classes 1, 2, 3, 4 and 5are Impaired under the Plan.   Class 5 consists of Insider Claims and its votes are not calculated when determining whether the Plan has been accepted for purposes of section 1129(a)(10).  Any Ballot not filed in accordance with the filing instructions on the Ballot pertaining to the Plan shall not be counted for voting purposes.

## II.     BACKGROUND

**A.     Background of Debtors and Their Managers**

The Debtors are Florida limited liability companies with a principal address and mailing address of 6849 Cobia Circle, Boynton Beach, Florida.  The Debtors primarily own residential and commercial real property.  Specifically:

a.  Enclave at Hillsboro owns two parcels located at 1174 through 1185 Hillsboro Mile in Hillsboro Beach, Florida, and approximately 50 concrete seawall panels;

b.  Hillsboro Mile Properties, LLC owns a lot located at 1103 and 1105 Hillsboro Mile in Hillsboro Beach, Florida, and no personal property;

c.  Antipodean Properties, LLC owns two parcels located at 2511 and 2513 N. Riverside Dr. Pompano Beach, Florida, and no personal property;

d.  Remi Hillsboro, LLC owns a lot located at 1107 Hillsboro Mile in Hillsboro Beach, Florida, and no personal property;

e.  Kerekes Land Trust Properties, LLC owns a parcel at the north-east corner of Boynton Beach Blvd. and Jog Road in Boynton Beach, Florida, and no personal property;

f.  Estates of Boynton Waters Properties, LLC owns two lots located at 6819 and 6825 Cobia Circle in Boynton Beach, Florida, and no personal property;

g.  Enclave at Boynton Waters Properties, LLC owns approximately 37 lots located at Esprit Way, Captiva Way in Boynton Beach, Florida, and no personal property; and

h.  Lake Placid Waterfront Properties, LLC owns a lot located at 2886 NE 30 Street, Lighthouse Point, Florida, and a counterclaim in litigation relating to sale commission for the prior sale of a lot.

The value of all of the Debtors' real property totals approximately $125,050,000.00 based on offers received, and $66,781,178.00 based on the property tax assessed value.

John B. Kennelly is the manager of all of the Debtors, and the 100% membership owner of Enclave at Hillsboro, LLC, Hillsboro Mile Properties, LLC, Remi Hillsboro, LLC and Lake Placid Waterfront Properties, LLC.  He is also the president of Estates of Boynton Waters West Corp., who is the 100% membership owner and managing member of Estates of Boynton Waters Properties, LLC, and the president of Enclave at Boynton Waters Corporation, who is the 100% membership owner and managing member of the Enclave at Boynton Waters Properties, LLC. John B. Kennelly is also the managing member and a 40% membership owner of Antipodean Properties, LLC.  Maurice O. Rhinehardt is the managing member and a 60% membership owner of Antipodean Properties, LLC, and the trustee of The Kerekes Land Trust No. 9, who is the 100% membership owner and managing member of Kerekes Land Trust Properties, LLC.

## B.    Commencement of Chapter 11 Case

The Debtors filed the Case in order to restructure their debts, maximize the value of their assets, and provide a 100% distribution to Creditors holding Allowed Claims.

## C.    Substantive Consolidation

On September 21, 2015, prior to the joint administration of the Debtors' cases, each Debtor filed a *Motion to Approve Substantive Consolidation of Related Debtors with Enclave at Hillsboro, LLC* in their respective case (collectively, the "Sub Con Motions") [*see* ECF No. 21 in 15-26148-EPK; ECF No. 21 in 15-26155-EPK; ECF No. 22 in 15-26143-EPK; ECF No. 27 in 15-26162-EPK; ECF No. 26 in 15-26156-EPK; ECF No. 28 in 15-26165-EPK; ECF No. 23 in 15-26141-EPK; and ECF No. 22 in  15-26152-EPK], which the Debtors hereby incorporate by reference.

Upon Confirmation of the Plan, Hillsboro Mile Properties, LLC, Antipodean Properties, LLC, Remi Hillsboro, LLC, Kerekes Land Trust Properties, LLC, Estates of Boynton Waters Properties, LLC, Enclave at Boynton Waters Properties, LLC, and Lake Placid Waterfront Properties, LLC will be substantively consolidated with the estate of Enclave at Hillsboro, LLC for the following limited purposes during the pendency of the Case:

a.  Treating assets of the eight estates as being a single estate of Enclave at Hillsboro, LLC, including avoidance actions under Chapter 5 of the Bankruptcy Code;

b. Permitting defendants of any of the foregoing avoidance actions to assert defenses against any of the Debtors against the plaintiff, Enclave at Hillsboro, LLC;

c. Treating all claims against the Debtors as against the single estate of Enclave at Hillsboro, LLC;

d. Having a single plan of reorganization filed by, or filed in the lead case of, Enclave at Hillsboro, LLC with all creditors of the Debtors voting on such plan;

e. Ignoring, for purposes of the Plan, the separate corporate structures of the Debtors so that there will be a single plan without formally merging the Related Debtors into the Enclave at Hillsboro, LLC so that title for real property held by each Debtor will remain with that Debtor and that after the confirmation the Debtors will still have their original separate corporate existences; and

f. Eliminating duplicative claims by the same creditor asserted against more than one estate.

## D.    Settlement with BI Boca

On November 15, 2015, the Debtors and BI Boca entered into the BI Boca Settlement. On November 25, 2015, the Court entered an order approving the foregoing settlement, and providing for a 14 day objection period [ECF No. 56], and a copy of the BI Boca Settlement is attached to such order.  13th Floor was the only party that filed an objection.  On December 16, 2015, the Court overruled such objection and entered an *Order Overruling Objection* [ECF No. 63].  The BI Boca Settlement is discussed in more detail in section 5.02 of the Plan.

## E.    Settlement with 13th Floor and Colony

In March 2016, the Debtors, Mr. Kennelly, 13th Floor and Colony entered into the 13th Floor Settlement that *inter alia* resolved the proof of claim for general unsecured claim in the amount of $829,309 that 13th Floor asserted against each of the Debtors (the "13th Floor Claims") for an Allowed Unsecured Claim in the amount of $50,000, and a payment in the amount of $275,000 from John S. Kennelly.  The Debtors will be filing a motion with the Court for approval of the 13th Floor Settlement.    The terms of the 13th Floor Settlement are incorporated herein by reference.

## F.    The Sale or Refinancing

In order to provide for the payments under the Plan, the Debtors shall sell all or part of the following real property, free and clear of all liens, claims, encumbrances, and other interests, in whatever manner the Debtors decide in their sole discretion as long as the Sale(s) (defined below) provide sufficient funds to provide for all payments under the Plan: a) the vacant residential lot located at 1107 Hillsboro Mile in Hillsboro Beach owned by Remi Hillsboro, LLC, b) the vacant residential lot located at 1103 and 1105 Hillsboro Mile in Hillsboro Beach by Hillsboro Mile Properties, LLC, and c) two vacant residential parcels located at 1174 through 1185 Hillsboro Mile in Hillsboro Beach owned by Enclave at Hillsboro, LLC (collectively, the

"Sale Assets"), or the Debtor shall obtain refinancing or financing from a third party investor (together, the "Financing"), subject to the following timeframe (the "Sale" or "Sales"):

    a.  The closing of the Sale(s) or Financing that will provide sufficient funds for all payments required under the Plan shall occur on or before November 14, 2016, which is the end of the One Year Period (as defined in section 5.02 of the Plan);

    b.  In the event the Debtors do not have a non-contingent, fully executed, contract(s) for the sale of part or all of the Sale Assets, on or before September 14, 2016, which is the end of the Ten Month Period (as defined in section 5.02 of the Plan), or some other later date agreed to by the Debtor and BI Boca, the Debtors shall schedule an auction of part or all of the Sale Assets on or before October 14, 2016; provided that, the Debtors may cancel the auction at any time in the event they obtain a binding, fully executed, non-contingent contract(s) for the sale of part or all of the Sale Assets that will provide sufficient funds for all payments required under the Plan and that will close on or before November 14, 2016; and

    c.  The proposed Sale(s) or Financing will provide for sufficient funds to provide for all payments required under the Plan.

The Debtors will seek the approval of bid procedures, any Sale, and other related matters through the appropriate Motion(s) to be filed with the Court after the date of the Plan.

## G.    Retained Professional

The Bankruptcy Court authorized the Debtors to retain certain professionals in connection with the Chapter 11 Case. Specifically, the Debtors have sought and obtained approval to retain Shraiberg, Ferrara & Landau, P.A. ("SFL") as general bankruptcy counsel, and Moecker Realty Auctions LLC as a broker and auctioneer. The Debtors may seek to employ additional professionals in connection with the Case.

## H.    The Claims Process

The Bankruptcy Code provides a procedure for all persons who believe they have a claim against a debtor to assert such claims, so that such claimant can receive distributions from the debtor's bankruptcy case. The bankruptcy court established a "bar date" – a date by which creditors must file their claims, or else such creditors will not participate in the Case or any distribution. After the filing of all claims, the Debtor evaluates such claims and can raise objections to them. These claims objections allow the Debtor to minimize claims against it, and thereby maximize the recovery to creditors.

The Court scheduled deadlines for filing proofs of Claims or Equity Interests against the Debtor. Claims may be asserted against the Debtor, and creditors may thereafter amend their proofs of claims prior to the confirmation of the Plan. Thus, the actual ultimate aggregate amount of Allowed Claims may differ significantly from the amounts used for the purposes as estimated herein. The estimates are based on the dollar amounts listed in the Debtor's Schedules and set forth in the filed proofs of claim. Accordingly, the Distribution amount that will

ultimately be received by any particular holder of an Allowed Claim may be adversely affected by the outcome of the claims resolution process.

## III.    CHAPTER 11 PLAN

THE FOLLOWING IS A BRIEF SUMMARY OF CERTAIN OF THE MORE SIGNIFICANT MATTERS CONTEMPLATED BY OR IN CONNECTION WITH THE CONFIRMATION OF THE PLAN.    THUS, THE FOLLOWING SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE PLAN, WHICH IS ATTACHED TO THIS DISCLOSURE STATEMENT AS EXHIBIT A.    CONSIDERATION OF THIS SUMMARY WILL NOT, NOR IS IT INTENDED TO, YIELD A THOROUGH UNDERSTANDING OF THE PLAN.    SUCH CONSIDERATION IS NOT A SUBSTITUTE FOR A FULL AND COMPLETE READING OF THE PLAN.    ALL HOLDERS OF CLAIMS AND INTERESTS ARE URGED TO REVIEW THE PLAN CAREFULLY.  THE PLAN, IF CONFIRMED, WILL BE BINDING ON THE DEBTOR AND ALL HOLDERS OF CLAIMS AND INTERESTS.

### A.    Plan Overview

The Debtors believe that confirmation of the Plan provides the best opportunity for maximizing recoveries for the Creditors.  Through the Plan, the Debtors will be able to provide a 100% disbursement to all holders of Allowed Claim on or shortly after the Effective Date of the Plan.  The Debtors believe, and will demonstrate to the Court, that the Creditors will receive not less than the amount that they would receive in a liquidation under Chapter 7 of the Bankruptcy Code.

### B.    Unclassified Claims

#### 1.    Allowed Administrative Claims.

Allowed Administrative Claims shall be paid upon the date on which such Claims become due in the ordinary course, in accordance with the terms and conditions of any agreement relating thereto or upon such other dates and terms as may be agreed upon by the holders of such Allowed Administrative Claims.  All other holders of Allowed Administrative Claims (with the exception of the professionals who will be paid 100% of the amount allowed by the Bankruptcy Court upon application to the Bankruptcy Court and those Claims otherwise specifically dealt with in the Plan) shall be paid 100% of their respective Allowed Administrative Claims in cash, unless otherwise ordered by the Bankruptcy Court, upon the latter of (i) the Effective Date, or, (ii) the date on which an order approving payment of such Administrative Claim becomes a Final Order.    Allowed Administrative Claims are estimated to total $150,000.00, which amount does not include the potential amounts that may be owed to Moecker Realty Auctions LLC that will be paid from the sale proceeds, as set forth in the application to employ such firm [ECF No. 51].

#### 2.    Priority Tax Claims

Except to the extent that a holder of an Allowed Priority Tax Claim under section 507(a)(8) of the Code has been paid by the Debtors prior to the Effective Date or agrees to a

different treatment, each holder of an Allowed Priority Tax Claim shall be paid in the ordinary course of Debtors' business on the date of assessment of such Claim.

### 3.    United States Trustee's Fees

The Debtors shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) through Confirmation on the Effective Date.  The Debtors shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) for post-confirmation periods within the time periods set forth in 28 U.S.C. §1930(a)(6), until the earlier of the closing of the Case by the issuance of a Final Decree by the Bankruptcy Court, or upon entry of an order of the Bankruptcy Court dismissing the Case, or converting the Case to another chapter under the Code, and the Debtors shall provide to the United States Trustee upon the payment of each post-confirmation payment an appropriate affidavit indicating disbursement for the relevant periods.

### C.    Treatment of Claims and Interests

### 1.    Class 1.  Allowed Secured Taxing Authority Claims

(a)    <u>Description</u>.  Class 1 consists of the Allowed Secured Taxing Authority Claims. The Debtors estimate that the Allowed Secured Taxing Authority Claims are in the amount of $1,162,606.50.

(b)    <u>Treatment</u>.  On the Effective Date, the holders of the Allowed Secured Taxing Authority Claims shall receive, in full satisfaction, settlement, release, extinguishment and discharge of such Claims, payment in an amount that will provide each holder of the Allowed Secured Taxing Authority Claim the entire Allowed Amount of such Claim, except to the extent that a holder of an Allowed Secured Taxing Authority Claim has been paid by the Debtors, with an interest rate established at the statutory rate or as otherwise determined by the Court.  The foregoing payments will be provided from the net proceeds of the Sale(s) or Financing on or before November 14, 2016.

(c)    <u>Impairment</u>.  The Class 1 Claim is Impaired.

### 2.    Class 2.  Allowed Lender Claim

(a)    <u>Description</u>.  Class 2 consists of the Allowed Lender Claim, which consists of the Lender Claim (defined below) held by BI Boca that consists of the following: (i) the Final Judgment of $38,047,369.60 as of July 29, 2015; (ii) the Fee Order of $155,305.87 as of July 29, 2015; (iii) additional fees in the amount of $71,158.57 paid by BI Boca in connection with the Debtors' attempted refinancing of the indebtedness owed to BI Boca ("<u>Refinancing Fees</u>"); (iv) interest on the Final Judgment and Fee Order calculated at the rate of 4.75% per year from the date of July 29, 2015 through November 14, 2015, for a total amount of $541,902.33; (v) additional fees in the amount of $123,678.75 incurred by BI Boca in connection with the foreclosure case and the Case ("<u>Additional Foreclosure and Bankruptcy Fees</u>") and collectively with the Final Judgment, the Fee Order, the Refinancing Fees and Additional Foreclosure and Bankruptcy Fees, the "<u>November 15, 2015 Claim</u>" in the total amount of $38,939,415.12; (vi) the additional interest and forbearance fee as set forth below; and (vii) all additional costs,

charges, expenses and reasonable attorneys' fees paid and disbursements paid or incurred by BI Boca in connection with the loan documents that are billed after October 30, 2015, including without limitation in connection with the Foreclosure Case and the Case ((i) through (vii), collectively, the "Lender Claim"). The loan made by BI Boca to the Debtors is secured by a perfected lien on, *inter alia*, all of the real property, improvements, fixtures; and other personal property owned by each of the Debtors (the "Property").

(b)    Treatment. On the Effective Date, the holder of the Allowed Lender Claim shall receive, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, payment in an amount that will provide the holder of the Allowed Lender Claim the entire Allowed Amount of such Claim in the following manner:

i.    The Debtors and BI Boca agree that the Debtors shall have one year from November 15, 2015, i.e., on or before November 14, 2016 (the "One Year Period") to pay the Lender Claim in full, in cash;

ii.    If the Lender Claim is paid in full, in cash, within six months from November 15, 2015, i.e., on or before May 14, 2016 (the "Six Month Period"), interest on the November 15, 2015 Claim shall be calculated at the rate of 11% per year from November 15, 2015 through the payoff date. Interest shall be calculated on the basis of the actual number of calendar days elapsed divided by a 360-day year;

iii.    If the Lender Claim is not paid in full, in cash within the Six Month Period, interest on the November 15, 2015 Claim shall be calculated at the rate of 14% per year from November 15, 2015 through the payoff date, and BI Boca shall be entitled to a minimum Forbearance Fee equal to $4,618,647.29 [November 15, 2015 Claim x 14% / 360 x 305 days] (which is inclusive of interest). Interest shall be calculated on the basis of the actual number of calendar days elapsed divided by a 360-day year. If the Lender Claim is paid in full, in cash, after the Six Month Period, but within ten months of November 15, 2015, i.e., on or before September 14, 2015 (the "Ten Month Period"), Debtors shall be required to pay the Forbearance Fee to satisfy the Lender Claim;

iv.    If the Lender Claim is paid in full after the Ten Month Period, interest on the November 15, 2015 Claim shall be calculated at the rate of 14% per year from November 15, 2015 through the payoff date. Interest shall be calculated on the basis of the actual number of calendar days elapsed divided by a 360-day year;

v.    If the Debtors fail to pay the Lender Claim in full, in cash, within the One Year Period, the Debtors shall, without any further action by the Debtors, BI Boca, the Court, or any other party, be deemed to have immediately relinquished any and all right, title and interest in and to the Property to Lender;

vi.    Debtors agree that the automatic stay shall be modified to permit BI Boca, at any time within ninety (90) days prior to the expiration of the One Year Period, to reset the Foreclosure Sale (as defined in the BI Boca Settlement) in State Court (as defined in the BI Boca Settlement) for any date after the expiration of the One Year Period (provided that if the Lender Claim is satisfied in full prior to the

expiration of the One Year Period, such Foreclosure Sale will be canceled);

vii.  Alternatively, at Lender's election and within a period of thirty days following written request by BI Boca, Debtors shall deliver to BI Boca deeds in lieu of foreclosure with respect to the Property, to be held in escrow until the expiration of the One Year Period, which shall be returned to the Debtors if the Lender Claim paid in full prior to the expiration of the One Year Period;

viii.  If the Debtors fail to duly and promptly observe, perform and discharge any covenant, term, condition or agreement contained in the BI Boca Settlement that are also incorporated herein, Debtors shall be in default. If Debtors fail to cure any such default within five (5) business days after receiving written notice thereof, BI Boca shall be entitled to complete relief from the automatic stay to exercise all of its remedies under the Loan Documents (as defined in the BI Boca Settlement) upon the filing of an affidavit attesting to the default and Debtors' failure to cure such default.  The exercise of such default remedies by BI Boca shall be without prejudice to BI Boca's right to receive payment in full of the Lender Claim as described herein;

ix.  Except as expressly set forth in the BI Boca Settlement and herein, other than defaults due to failure to list and market the Properties with brokers acceptable to Lender, all rights and obligations of the Debtors and BI Boca under the Loan Documents shall remain in full force and effect.  Without limitation, Debtors shall continue to maintain and insure the Property consistent with their obligations under the Loan Documents (as defined in the BI Boca Settlement) until the Lender Claim is paid in full in cash;

x.  Written notice to the Debtors or BI Boca with respect to the BI Boca Settlement and the related terms in the Plan shall be provided in the manner set forth in the BI Boca Settlement;

xi.  Any other relevant terms set forth in the BI Boca Settlement are hereby incorporated by reference; and

xii.  The Debtors are permitted to prepay without penalty.

xiii.  To the extent not inconsistent with this section, the loan documents relating to the Allowed Lender Claim are modified to eliminate any provisions regarding: (i) prepayment premiums or penalties; (ii) yield maintenance; and (iii) any financial defaults based upon any financial ratios.

Payment to the holder of the Allowed Lender Claim shall be provided from the net proceeds of the Sale(s) or Financing.

(c)  <u>Impairment</u>.  The Class 2 Claim is Impaired.

3. **Class 3. Allowed Priority Unsecured Claims**

(a)    <u>Description</u>. Class 3 consists of the Allowed Priority Unsecured Claims.  The Debtors estimate that the Allowed Priority Unsecured Claims are in the amount of $44,122.87.

(b)    <u>Treatment</u>. Within two weeks of  the Effective Date, the holders of the Allowed Priority Unsecured Claims shall receive, in full satisfaction, settlement, release, extinguishment and discharge of such Claims, payment in an amount that will provide each holder of the Allowed Secured Taxing Authority Claim the entire Allowed Amount of such Claim, except to the extent that a holder of an Allowed Priority Unsecured Claims has been paid by the Debtors. The foregoing payments will be provided from the net proceeds of the Sale(s) or Financing to be paid on or before November 28, 2016.

(c)    <u>Impairment</u>.  The Class 3 Claims are Impaired.

4. **Class 4.  Allowed General Unsecured Claims**

(a)    <u>Description.</u>  Class 4 consists of the Allowed General Unsecured Claims.  The Debtors estimate that the Allowed General Unsecured Claims are between $275,000.00 and $1,447,641.74, which estimates include 13th Floor's Allowed Unsecured Claim in the amount of $50,000.

(b)    <u>Treatment.</u>  Within two weeks of the Effective Date, the holders of the Allowed General Unsecured Claims shall receive, in full satisfaction, settlement, release, extinguishment and discharge of such Claims, payment in an amount that will provide each holder of the Allowed General Unsecured Claims the entire Allowed Amount of such Claim, except to the extent that a holder of an Allowed General Unsecured Claims has been paid by the Debtors.  The foregoing payments will be provided from the net proceeds of the Sale(s) or Financing to be paid on or before November 28, 2016.

(c)    <u>Impairment</u>.  The Class 4 Claims are Impaired.

5. **Class 5.  Allowed Equity Interests**

(a)    <u>Description.</u>  Class 5 consists of Allowed Equity Interests.

(b)    <u>Treatment.</u>   On the Effective Date, the holders of Allowed Equity Interest shall retain their Equity Interests in the Debtors.  The holders of Allowed Equity Interests shall receive no Distribution under the Plan on account of such Equity Interests.

(c)    <u>Impairment</u>.  The Class 5 Claims are Impaired.

**D.    Distributions Under the Plan**

(a)    Subject to Rule 9010, and except as otherwise provided in Section 6.04 of the Plan, all distributions under the Plan shall be made by the Reorganized Debtors to the holder of each Allowed Claim or Allowed Equity Interest, in the manner provided for in the Plan, at the address of such holder as listed on the Schedules and/or Proof of Claim as of the Confirmation Date unless the Debtors or Reorganized Debtors have been notified in writing of a change of

address, including by the filing of a proof of Claim by such holder that provides an address different from the address reflected on the Schedules.

(b)      Except as otherwise provided for in the Plan and Confirmation Order, any payment of Cash made by the Reorganized Debtors pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer.

(c)      Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(d)      When any distribution on account of an Allowed Claim pursuant to the Plan would otherwise result in a Distribution that is not a whole number, the actual distribution shall be rounded as follows:  fractions of ½ or greater shall be rounded to the next higher whole number and fractions of less than ½ shall be rounded to the next lower whole number.  Cash to be distributed pursuant to the Plan shall be adjusted as necessary to account for the rounding provided in Section 6.03(f) of the Plan.

(e)      In the event that any Distribution to any holder is returnable as undeliverable, the Debtors shall use reasonable efforts to determine the current address of such holder, but no Distribution to such holder shall be made unless and until the Debtors have determined the then current address of such holder, at which time such Distribution shall be made to such holder without interest; provided that any Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the Effective Date or the Distribution Date, whichever shall apply, and any entitlement of any holder of any Claim to such distributions shall be extinguished and forever barred.

(f)      Unless otherwise provided herein, all initial distributions and deliveries shall be made on the Effective Date.

(g)      At the close of business on the date of the Confirmation Hearing, the claims register shall be closed, and there shall be no further changes in the record holders of any Claims. The Debtors shall have no obligation to recognize any transfer of any Claims occurring after the date of the Confirmation Hearing; *provided, however,* that the foregoing will not be deemed to prohibit the sale or transfer of any Claim subsequent to the date of the Confirmation Hearing and prior to the Effective Date, if applicable.  The Debtors shall instead be entitled to recognize and deal for all purposes under the Plan with only those record holders as of the close of business on the date of the Confirmation Hearing.

**E.      Objections to and Resolution of Claims, Administrative Claims and General Unsecured Claims and Distributions**

Any and all objections to any claim must be filed by the deadline set by the Court (the "Objection Deadline"), or with respect to rejection claims, within five (5) days of their filing (the "Objection to Rejection Claims Deadline").  In the event that the Debtors settle any claim objection, the Debtors may seek approval by submitting an Agreed Order in a form acceptable to the Debtors and the holder of the Disputed Claim.  In the event that the Debtors and holder of a Disputed Claim do not reach a consensual resolution of the claim objection, then the Debtors will set the contested matter for hearing before the Bankruptcy Court and will provide all interested parties with notice of the date set.

If any distribution to a holder of an Allowed Claim remains unclaimed for a period of ninety (90) days after such distribution has been delivered to the holder the Allowed Claim, the amount of the Claim upon which such distribution was made shall be canceled and said claimant shall not be entitled to any further distributions hereunder.  A distribution of funds is unclaimed, if, without limitation, the holder of a Allowed Claim does not cash a check, returns a check or if the check mailed to the holder at the address set forth in the Schedules, the Amended Schedules or set forth in a proof of claim filed by such holder is returned by the United States Postal Service or any other country's postal service as undeliverable.

Subject to applicable law, from and after the Effective Date, the Debtors will have the authority to file, settle, compromise, withdraw, arbitrate or litigate to judgment objections to Claims pursuant to applicable procedures established by the Bankruptcy Code, the Bankruptcy Rules and the Plan.  Any and all objections to any claim must by filed prior to the Objection Deadline, or as otherwise ordered by the Court, or with respect to rejection claims, prior to the Objection to Rejection Claims Deadline.

An Objection to the allowance of a Claim or Interest will be in writing and may be filed with the Bankruptcy Court by the Debtor, at any time on or before the Claim Objection Deadline. The failure by Debtors to object to any Claim or Interest for voting purposes will not be deemed a waiver of Debtor's right to object to, or re-examine, any such Claim in whole or in part.

**ANY CLAIM ARISING FROM THE REJECTION OF AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT ARE NOT FILED WITHIN THE TIMES SET FORTH HEREIN WILL BE AUTOMATICALLY DISALLOWED, FOREVER BARRED FROM ASSERTION, AND SHALL NOT BE ENFORCEABLE AGAINST, AS APPLICABLE, THE DEBTORS, THE REORGANIZED DEBTORS, THE ESTATES, OR PROPERTY OF THE FOREGOING PARTIES, WITHOUT THE NEED FOR ANY OBJECTION BY THE DEBTORS OR THE REORGANIZED DEBTORS, AS APPLICABLE, OR FURTHER NOTICE TO, OR ACTION, ORDER, OR APPROVAL OF THE COURT OR ANY OTHER ENTITY, AND ANY CLAIM ARISING OUT OF THE REJECTION OF THE EXECUTORY CONTRACT OR UNEXPIRED LEASE SHALL BE DEEMED FULLY SATISFIED, RELEASED, AND DISCHARGED.**

1.    **Unclaimed Funds**

Any funds unclaimed for the period described in paragraph 6.03(g) above shall be forfeited by the holder and will be re-deposited in the Disbursing Agent's account to be paid over to the Court pursuant to Local Rule 3011-1(B).

2.    **Establishment and Maintenance of Reserve**

On the initial distribution date and each subsequent distribution date, the Reorganized Debtors shall reserve from the Distributions to be made on such dates to the holders of Allowed Claims, an amount equal to One Hundred Percent (100%) of the Distributions to which holders of Disputed Claims would be entitled under the Plan as of such dates if such Disputed Claims were Allowed Claims in their Disputed Claim Amounts, or as estimated by the Debtors or the Court in accordance with Section 6.08 of the Plan (the "Disputed Claims Reserve").

3. **Distribution Upon Allowance of Disputed Claims**

The holder of a Disputed Claim that becomes an Allowed Claim subsequent to any Distribution Date shall receive distributions of Cash and any other consideration from the Disputed Claims Reserve from the Reorganized Debtors upon the subsequent distribution date following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order.  Such Distributions shall be made in accordance with the Plan.

F. **Executory Contracts and Unexpired Leases**

The Code grants the Debtors the power, subject to the approval of the Court, to assume or reject executory contracts and unexpired leases.  If an executory contract or unexpired lease is rejected, the other party to the agreement may file a claim for damages incurred by reason of the rejection.  In the case of rejection of leases of real property, such damage claims are subject to certain limitations imposed by the Code.

The Debtors will assume Enclave at Hillsboro, LLC's submerged land lease with the Florida Department of Environmental Protection.  The Debtors do not believe that any cure payment will be due for the assumption of such lease.

Pursuant to sections 365(a) and 1123(b)(2) of the Code, all executory contracts and unexpired leases between the Debtors and any Person shall be deemed <u>rejected</u> by the Reorganized Debtors as of the Effective Date, <u>except</u> for any executory contract or unexpired lease (i) which previously has been assumed or rejected pursuant to an order of the Court entered prior to the Effective Date, (ii) as to which a motion for approval of the assumption or rejection of such executory contract or unexpired lease has been filed and served prior to the Effective Date or (iii) which is set forth herein or listed on the Assumption List which shall be filed with the Court and served on the affected parties by no later than twenty (20) days prior to the balloting deadline; *provided, however*, that the Debtors or Reorganized Debtors shall have the right, on or prior to the Confirmation Date, to amend the Assumption List to delete any executory contract or unexpired lease therefrom or add any executory contract or unexpired lease thereto, in which event such executory contract(s) or unexpired lease(s) shall be deemed, respectively, assumed or rejected.  The Debtors or Reorganized Debtors shall provide notice of any amendments to the Assumption List to the non-debtor parties to the executory contracts and unexpired leases affected thereby.  The listing of a document herein or on the Assumption List shall not constitute an admission by the Debtors or Reorganized Debtors that such document is an executory contract or an unexpired lease or that the Debtors or Reorganized Debtors have any liability thereunder.

1. **Schedules of Assumed Executory Contracts and Unexpired Leases; Inclusiveness**

Each executory contract and unexpired lease listed or to be listed on the Assumption List that relates to the use or occupancy of real property shall be deemed to include (i) all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed on the Assumption List and (ii) all executory contracts or unexpired

leases appurtenant to the premises listed on the Assumption List, including, without limitation, all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vault, tunnel or bridge agreements or franchises, and any other interests in real estate or rights in rem relating to such premises, unless any of the foregoing agreements previously have been assumed.

## 2. Insurance Policies

Each of the Debtors' insurance policies and any agreements, documents or instruments relating thereto, including without limitation, any retrospective premium rating plans relating to such policies, shall be treated as executory contracts under the Plan. Notwithstanding the foregoing, distributions under the Plan to any holder of a Claim covered by any insurance policies and related agreements, documents or instruments that are assumed hereunder, shall comply with the treatment provided under the Plan. Nothing contained in the Plan shall constitute or be deemed a waiver or release of any Action that the Debtors may hold against any entity, including, without limitation, the insurers under any of the Debtor's policies of insurance.

## 3. Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases

Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute (i) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Code, of the assumption of the executory contracts and unexpired leases assumed pursuant to Article VII of the Plan and (ii) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to the Plan.

### a. Cure of Defaults

To the extent that cure payments are due with respect to an executory contract or unexpired lease to be assumed pursuant to the Plan, the amount of such cure payment shall be listed in the Plan Supplement. To the extent that the non-debtor party to any executory contract or unexpired lease disagrees with the cure amount listed in the Plan Supplement, such party must file a notice of dispute with the Court and serve such notice on the Debtors by no later than five (5) days prior to the Confirmation Hearing. Except as may otherwise be agreed to by the parties or provided herein, within ninety (90) days after the Effective Date, the Reorganized Debtors shall cure any and all undisputed defaults under any executory contract or unexpired lease assumed pursuant to the Plan in accordance with section 365(b)(1) of the Code. Except as otherwise provided herein, all disputed defaults that are required to be cured shall be cured either within ninety (90) days of the entry of a Final Order determining the amount, if any, of the Debtors' or Reorganized Debtors' liability with respect thereto, or as may otherwise be agreed to by the parties. If there are any objections filed, the Court shall hold a hearing. In the event the Court determines that the cure amount is greater than the cure amount listed by the Debtors, the Reorganized Debtors may elect to reject the contract or unexpired lease and not pay such greater cure amount. To the extent there are any unexpired leases under which the Debtors are the lessor, the Debtors intend to assume such leases and do not believe there are any defaults to be cured.

### b.      Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan

Claims arising out of the rejection of an executory contract or unexpired lease pursuant to the Plan must be filed with the Court and/or served upon the Debtors or Reorganized Debtors or as otherwise may be provided in the Confirmation Order, by no later than thirty (30) days after the later of (i) notice of entry of an order approving the rejection of such executory contract or unexpired lease, (ii) notice of entry of the Confirmation Order and (iii) notice of an amendment to the Assumption List.  Any Claim not filed within such time will be forever barred from assertion against the Debtors, their Estate, the Reorganized Debtors and their property.  Unless otherwise ordered by the Court, all Claims arising from the rejection of executory contracts and unexpired leases shall be treated as Unsecured Claims under the Plan.

### c.      Indemnification Obligations

For purposes of the Plan, the obligations of the Debtors to defend, indemnify, reimburse, or limit the liability against any claims or obligations of its present and former directors, officers or employees who served as directors, officers and employees, respectively, on or after the Petition Date, pursuant to the Debtor's certificate of incorporation or bylaws, applicable state law or specific agreement, or any combination of the foregoing, shall survive confirmation of the Plan, remain unaffected thereby, and not be discharged, irrespective of whether indemnification, defense, reimbursement or limitation is owed in connection with an event occurring before, on or after the Commencement Date.

## G.      Amendment, Modification, Revocation and Withdrawal of the Plan

Alterations, amendments or modifications of the Plan may be proposed in writing by the Debtors at any time prior to the Confirmation Date in conformity with section 1127(a) of the Code, provided that the Plan, as altered, amended or modified, satisfies the conditions of sections 1122, 1123 and 1129 of the Code, and the Debtors shall have complied with section 1125 of the Code.  The Plan may be altered, amended or modified by the Debtors at any time after the Confirmation Date in conformity with section 1127(b) of the Code, provided that the Plan, as altered, amended or modified, satisfies the requirements of sections 1122 and 1123 of the Code and the Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under section 1129 of the Code and the circumstances warrant such alterations, amendments or modifications.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

Prior to the Effective Date, the Debtors, and without the approval of the Bankruptcy Court, and without notice to all holders of Claims and Interests, insofar as it does not materially adversely affect the interests of holders of Claims and Interests, may correct any defect, omission or inconsistency in this Plan in such manner and to such extent as may be necessary to expedite the execution of this Plan.

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtors revoke or withdraw the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall constitute or be

deemed a waiver or release of any Claims or Actions by or against the Debtors or any other Person, an admission against interests of the Debtors, nor shall it prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors.

## H.    Effect of Confirmation

The Plan shall be binding upon and inure to the benefit of the Debtors, the holders of Claims and Equity Interests, and their respective successors and assigns, including, without limitation, the Reorganized Debtor.

### 1.    Continued Limited Liability Company Existence

Except as otherwise provided in the Plan, the Debtors shall continue to exist after the Effective Date with all powers of a limited liability company, pursuant to the applicable law in the jurisdiction in which the Debtors are formed and pursuant to the respective certificate of incorporation and bylaws in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval.

### 2.    Vesting of Assets

Except as otherwise provided in the Plan, pursuant to section 1141 of the Code, the property of the Estate of the Debtors, including, without limitation, the Actions shall revest in the Reorganized Debtors on the Effective Date, free and clear of all Liens, Claims and interests of holders of Claims and Equity Interests, except as otherwise provided in the Plan or the Confirmation Order.

## I.    Discharge, Exculpation, Injunction, Release and Limitation of Liability

### 1.    Discharge of Debtors

Except as otherwise provided herein or in the Confirmation Order, the rights afforded herein and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction, discharge and release of Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Commencement Date, against the Debtors and the Debtors in Possession, the Estates, any of the assets or properties under the Plan.  Except as otherwise provided herein, (i) on the Effective Date, all such Claims against the Debtors, and Equity Interest in the Debtors shall be satisfied, discharged and released in full, and (ii) all Persons shall be precluded and enjoined from asserting against the Reorganized Debtors, their successors, their assets or properties, any other or further Claims or Equity Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not such holder has filed a proof of claim or proof of equity interest and whether or not such holder has voted to accept or reject the Plan.  Notwithstanding the foregoing, nothing in the Plan shall release, discharge, enjoin or preclude any Claim that has not arisen as of the Effective Date that any governmental unit may have against the Debtors and nothing in the Plan shall release, nullify or enjoin the enforcement of any liability to a governmental unit under environmental statutes or regulations that any entity

would be subject to as the owner or operator of property after the date of entry of the Confirmation Order.

2.      **Injunction Related to Discharge**

*Except as otherwise expressly provided in the Plan or the Confirmation Order, all Persons who have held, hold or may hold Claims against the Debtors, or hold or may hold Equity Interests in the Debtors, are permanently enjoined, on and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Equity Interest, (ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against the Debtors, on account of any such Claim or Equity Interest, (iii) creating, perfecting or enforcing any Lien or asserting control of any kind against the Debtors or against the property or interests in property of the Debtors on account of any such Claim or Equity Interest, and (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors or against the property or interests in property of the Debtors on account of any such Claim or Equity Interest.  Such injunctions shall extend to successors of the Debtors (including, without limitation, the Reorganized Debtor) and their respective properties and interests in property.*

3.      **Release by Holders of Impaired Claims**

*The Plan, and the provisions and distributions set forth therein, is a full and final settlement and compromise of all Claims and causes of action, whether known or unknown, that holders of Claims against the Debtors, and holders of Equity Interests in the Debtors, may have against the Debtors.  In consideration of the obligations of the Debtors and the Reorganized Debtors, under this Plan, the securities, contracts, instruments, releases and other agreements or documents to be delivered in connection with this Plan, each holder of a Claim against the Debtors, or Equity Interest in the Debtors, shall be deemed to forever release, waive and discharge all Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities (other than the rights to enforce the Debtors' or the Reorganized Debtors' obligations under this Plan and the securities, contracts, instruments, releases and other agreements and documents delivered thereunder) whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Chapter 11 case or the conduct thereof, or the Plan.  Notwithstanding the foregoing, nothing in this paragraph, the Plan, or the Confirmation Order shall release any Claim or causes of action for gross negligence or willful misconduct.*

4.      **Injunction Against Interference with the Plan**

*Upon the entry of a Confirmation Order with respect to the Plan, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan, except with respect to actions any such entity may take in connection with the pursuit of appellate rights.*

5.      **Votes Solicited in Good Faith**

The Debtors have, and upon confirmation of the Plan shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and on account of such solicitation will not, be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.

6.      **Term of Bankruptcy Injunction or Stay**

All injunctions or stays provided for in the Case under sections 105 or 362 of the Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**J.**      **Retention of Jurisdiction**

(a)      To hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, if any are pending, and the allowance of Claims resulting therefrom;

(b)      To determine any and all adversary proceedings, motions, applications and contested matters, and other litigated matters pending on the Confirmation Date;

(c)      To hear and determine all Actions, including, without limitation, Actions commenced by the Debtors or any other party in interest with standing to do so, pursuant to sections 505, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Code, collection matters related thereto, and settlements thereof;

(d)      To hear and determine any objections to or the allowance, classification, priority, compromise, estimation or payments of any Administrative Claims, Claims or Equity Interests;

(e)      To ensure that Distributions to holders of Allowed Claims are accomplished as provided in the Plan;

(f)      To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(g)      To issue such orders in aid of execution and consummation of the Plan, to the extent authorized by section 1142 of the Code;

(h)      To consider any amendments to or modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in the Plan, the Plan Supplement, or any order of the Court, including, without limitation, the Confirmation Order;

(i)      To hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 330, 331, and 503(b) of the Code;

(j)      To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

(k)      To recover all Assets of the Debtors and Property of the Estate, wherever located;

(l)      To determine any Claim of or any liability to a governmental unit that may be asserted as a result of the transactions contemplated herein;

(m)      To enforce the Plan, the Confirmation Order and any other order, judgment, injunction or ruling entered or made in the Case, including, without limitation, the discharge, injunction, exculpation and releases provided for in the Plan;

(n)      To take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation;

(o)      To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Code (including, but not limited to, an expedited determination under section 505(b) of the Code of the tax liability of the Debtors for all taxable periods through the Effective Date for all taxable periods of the Debtors through the liquidation and dissolution of such entity);

(p)      To enter and implement orders and to take such other actions as may be necessary or appropriate to restrain interference by any Person or entity with the consummation or implementation of the Plan, including, without limitation, to issue, administer, and enforce injunctions, releases, assignments, or indemnity obligations contained in the Plan and the Confirmation Order;

(q)      To hear any other matter not inconsistent with the Code; and

(r)      To enter a final decree closing the Case; *provided however*, that nothing in the Plan shall divest or deprive any other court or agency of any jurisdiction it may have over the Reorganized Debtors under applicable environmental laws.

## K.      Payments Within 90 Days of Filing

The Debtors have made no payments within ninety (90) days prior to the Petition Date.

## IV.      CONFIRMATION OF THE PLAN

## A.      Solicitation of Votes

In accordance with sections 1126 and 1129 of the Bankruptcy Code, the Claims in Class 1, Class 2, Class 3, Class 4 and Class 5 are impaired and entitled to vote on the Plan. Class 5 is impaired, and consists of Insider and thus their votes are not calculated when determining whether the Plan has been accepted for purposes of section 1129(a)(10).

An Impaired Class of Claims will have accepted the Plan if (i) the holders of at least two-thirds in amount of the Allowed Claims actually voting in the Class have voted to accept the

Plan, and (ii) the holders of more than one-half in number of the Allowed Claims actually voting in the Class voted to accept the Plan, not counting the vote of any holder designated under section 1126(e) of the Bankruptcy Code or any insider. A vote may be disregarded if the Court determines, after notice and a hearing, that acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Code. Holders of Claims valued at an unknown amount, and holders of Disputed Claims, shall not be entitled to vote on the Plan, unless otherwise provided for in the Plan.

A vote may be disregarded if the Court determines, after notice and a hearing, that acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Code.

## B.    Confirmation Hearing

The Bankruptcy Court shall schedule the Confirmation Hearing to consider approval of this Disclosure Statement and confirmation of the Plan before the Honorable Erik P. Kimball, Bankruptcy Judge for the United States Bankruptcy Court for the Southern District of Florida, located at the United States Courthouse, Flagler Waterview Building, 1515 North Flagler Drive, 8th Floor, West Palm Beach, Florida 33401. The Confirmation Hearing may be adjourned from time to time without notice except as given at the Confirmation Hearing or any subsequent adjourned Confirmation Hearing. The Bankruptcy Court shall set forth a deadline to file objections, if any, to the approval of this Disclosure Statement or the confirmation of the Plan.

Any objection to Confirmation must be in writing and specify in detail the name and address of the objector, all grounds for the objection and the amount of the Claim. Any such objection must be filed with the Court and serviced so that it is received by the Bankruptcy Court and the following parties on or before the deadline set by the Bankruptcy Court:

> Shraiberg, Ferrara & Landau
> Attorneys for the Debtor
> 2385 N.W. Executive Center Drive, Suite 300
> Boca Raton, Florida 33431
> Phone: (561) 443-0800/Fax: (561) 998-0047
> Attn: Bradley S. Shraiberg
>        Bernice Lee
>
> -and-
>
> Ariel Rodriguez
> Office of the U.S. Trustee
> 51 SW First Avenue, Room 1204
> Miami, FL 33130
> Phone: (305) 536-7285

## C.    Confirmation Standards

For a plan to be confirmed, the Bankruptcy Code requires, among other things, that a plan be proposed in good faith and comply with the applicable provisions of chapter 11 of the

Bankruptcy Code. Section 1129 of the Bankruptcy Code also imposes requirements that with respect to each class of claims or interests, such class has accepted the plan or such class is not impaired under the plan, that confirmation of a plan is not likely to be followed by the need for further financial reorganization, that a plan be in the best interest of creditors, and that a plan be fair and equitable with respect to each class of claims or interests which is impaired under the Plan.

The Bankruptcy Court will confirm a plan only if it finds that all of the requirements enumerated in section 1129 of the Bankruptcy Code have been met. The Debtor believes that the Plan satisfies all of the requirements for confirmation for the following reasons:

## V.    FUNDING AND FEASIBILITY OF THE PLAN

### A.    Funding of the Plan

Funds to be used to make cash payments under the Plan shall be derived from the Sales of the Sale Assets or Refinancing as set forth in section 2.05 of the Plan. The value of all of the Debtors' real property totals approximately $125,050,000.00 based on offers received, and $66,781,178.00 based on the property tax assessed value.

### B.    Risks to Creditors

The Debtors do not anticipate that there are any significant federal tax consequences the Plan would have on the Debtors or theirCreditors. As stated above, the Disclosure Statement will not be construed to be advice on the tax, securities or other legal effects of the Plan. Each Creditor should, therefore, consult with its own legal, business, financial and tax advisors as to any such matters concerning the solicitation, the Plan or the transactions contemplated thereby.

### C.    Best Interests Test and Liquidation Analysis

With respect to each impaired Class of Claims and Equity Interests, confirmation of the Plan requires that each holder of an Allowed Claim and Equity Interest either (i) accept the Plan or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date. To determine what holders of Claims and Equity Interests of each impaired Class would receive if the Debtors were liquidated under chapter 7, the Bankruptcy Court must determine the dollar amount that would be generated from the liquidation of the Debtors' assets and properties in the context of a chapter 7 liquidation case where the assets were liquidated by a Trustee in bankruptcy. The cash amount that would be available for satisfaction of Claims and Interests would consist of the proceeds resulting from the disposition of the unencumbered assets and properties of the Debtors, augmented by the unencumbered cash held by the Debtors at the time of the commencement of the liquidation case. Such cash amount would be reduced by the amount of the costs and expenses of the liquidation and by such additional administrative expenses and priority claims that might result from the termination of the Debtors' business and the use of chapter 7 for the purposes of liquidation.

The Debtors' cost of liquidation under chapter 7 would include the fees payable to the chapter 7 trustee, and the fees payable to the professionals that such a trustee might engage. In addition, claims would arise by reason of the breach or rejection of obligations incurred, and

leases and Executory Contracts assumed or entered into by the Debtors during the pendency of this chapter 11 case.  The foregoing types of claims and other claims that might arise in a liquidation case or result from the pending chapter 11 case, including any unpaid expenses incurred by the Debtors during the Chapter 11 Case such as compensation for attorneys, financial advisors and accountants, would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay pre-petition Claims.

After considering the effects that a chapter 7 liquidation would have on the ultimate proceeds available for distribution to creditors in the chapter 11 case, including (i) the increased costs and expenses of a liquidation under chapter 7 arising from fees payable to a trustee in bankruptcy and professional advisors to such trustee, (ii) the erosion in value of assets in a chapter 7 case in the context of the expeditious liquidation required under chapter 7 and the "forced sale" environment that would prevail, and (iii) the substantial increases in Claims which would be satisfied on a priority basis or on parity with creditors in the Chapter 11 Cases, the Debtors have determined that confirmation of the Plan will provide each holder of an Allowed Claim and Interest not less than such holder would receive pursuant to liquidation of the Debtor under chapter 7.

The Debtors' Liquidation Analysis is attached hereto as **EXHIBIT B**.  The information set forth in Exhibit B provides a summary of the liquidation values of the Debtors' assets, assuming a chapter 7 liquidation in which a trustee appointed by the Bankruptcy Court would liquidate the Debtors' assets.  Underlying the Liquidation Analysis is a number of estimates and assumptions that, although developed and considered reasonable by the management, are inherently subject to significant economic and competitive uncertainties and contingencies beyond the control of the Debtors and their management.  The Liquidation Analysis is also based on assumptions with regard to liquidation decisions that are subject to change.  Accordingly, the values reflected might not be realized if the Debtors were, in fact, to undergo such a liquidation.  The Debtors have used the best estimation to provide the information set forth in the Liquidation Analysis.

## D.    Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires a debtor to demonstrate that confirmation of a plan of reorganization is not likely to be followed by the liquidation or the need for further financial reorganization of a debtor unless so provided by the plan of reorganization. For purposes of determining whether the Plan meets this requirement, the Debtor has analyzed its ability to meet its financial obligations as contemplated thereunder.  As part of this analysis, the Debtors have prepared the Sources and Uses Statement attached hereto as **EXHIBIT C.**  The Sources and Uses Statement demonstrates that the Debtors will have sufficient cash to provide for the payments under the Plan due on or before the Effective Date.

The Debtors believes they will be able to provide for all payments required pursuant to the Plan.  Accordingly, the Debtors assert that they are able to perform all of their obligations under the Plan, and as such, Debtors' Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

# VI.    ALTERNATIVES TO THE PLAN

Although this Disclosure Statement is intended to provide information to assist a Claim or Interest holder in determining whether to vote for or against the Plan, a summary of the alternatives to confirmation of the Plan may be helpful.

If the Plan is not confirmed and consummated, the alternatives to the Plan include (i) liquidation of the Debtors under chapter 7 of the Bankruptcy Code; (ii) an alternative plan of reorganization; or (iii) dismissal of the Chapter 11 Case leaving creditors and interest holders to pursue available non-bankruptcy remedies.

## 1.    Liquidation Under Chapter 7

If no plan is confirmed, the Chapter 11 Cases may be converted to a case under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be selected to liquidate the Debtors' assets for distribution in accordance with the priorities established by chapter 7.  The Debtors believe that liquidation under chapter 7 might result in smaller distributions being made to Creditors than those provided for in the Plan because (i) the Debtors' assets would have to be sold or otherwise disposed of in a forced sale situation over a short period of time, (ii) additional administrative expenses would be involved in the appointment of a trustee, and (iii) additional expenses and claims, some of which may be entitled to priority, would be generated during the liquidation.

## 2.    Alternative Plan of Reorganization

If the Plan is not confirmed, the Debtors (or if the Debtors' exclusive period in which to file a plan of reorganization has expired, any other party in interest) may attempt to formulate an alternative plan.  Such a plan might involve either a reorganization and continuation of the Debtors' businesses or an orderly liquidation of their assets.

## 3.    Dismissal of the Chapter 11 Cases

If the Chapter 11 Cases are dismissed, creditors would be free to pursue non-bankruptcy remedies in their attempts to satisfy claims against Debtors.  However, in that event, creditors would be faced with the costs and difficulties of attempting to collect claims from either a non-operating entity or an entity in foreclosure.

## CONCLUSION

For all the reasons set forth herein, the Debtors believe that confirmation and consummation of the Plan is preferable to all other alternatives. The Plan provides a 100% distribution to holders of the all Allowed Claims. Consequently, the Debtors urge all eligible holders of Impaired Claims to vote to **accept** the Plan, and to complete and return their ballots so they will be received on or before the deadline set by the Bankruptcy Court.

**DATED: March 7, 2016**

By: _____

John B. Kennedy, on behalf of the Debtors

## <u>ATTORNEY CERTIFICATION</u>

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was sent to those parties as listed on the Court's Case Management / Electronic Case Filing, this the 7th day of March, 2016.

**Respectfully submitted,**

Bradley S. Shraiberg
Bernice C. Lee
SHRAIBERG, FERRARA & LANDAU, P.A.
2385 NW Executive Center Drive, Ste. 300
Boca Raton, FL 33431
Telephone: (561) 443-0800
Facsimile:  (561) 998-0047
Email: bshraiberg@sfl-pa.com
Email: blee@sfl-pa.com

By:   /s/ Bradley S. Shraiberg
Bradley S. Shraiberg
Florida Bar. No. 121622
Bernice C. Lee, Esq.
Florida Bar No. 73535

**<u>Exhibit A</u>**

**Debtor's Plan of Reorganization [*see* ECF No. 85]**

**Exhibit B**

**Liquidation Analysis**

**Liquidation Analysis as of Confirmation**

**Consolidated Assets**

| | | |
|---|---:|---|
| Property | 66,781,178.00 | *based on property tax assessed value |
| Counterclaim | 55,000.00 | |
| Seawall | 25,000.00 | |
| Total | 66,861,178.00 | |

**Mandated Liquidation Expenses**

| | | |
|---|---:|---|
| Chapter 11 Administrative Claims and Expenses | 107,000.00 | *estimated (less retainer) |
| Chapter 7 Administrative Claims and Expenses | 6,686,117.80 | *based on 10% of total assets |
| Total | 6,793,117.80 | |

**Net Cash Availabe to Creditors**                                                          **60,068,060.20**

**Payments to Creditors**

| | | |
|---|---|---:|
| Secured Taxing Authority Claims | | 1,162,606.50 |
| Lender Claim | | 38,939,415.12 |
| | | 40,102,021.62 |

| | |
|---|---:|
| Payments to Secured Creditors | 40,102,021.62 |
| SECURED CLAIMS RECOVERY % | 100.00% |

| | | |
|---|---|---:|
| | Remaining cash | 19,966,038.58 |
| Priority Unsecured Claims | | 44,122.87 |
| General Unsecured Claims | | 1,447,641.74 |
| | Total | 1,491,764.61 |

| | |
|---|---:|
| Payment to Unsecured Claims | 1,491,764.61 |
| UNSECURED CLAIMS RECOVERY % | 100.00% |

**<u>Exhibit C</u>**

**Sources and Uses Statement**

**Plan Payments**

**Sources (estimated)**

| | | |
|---|---:|---|
| Proceeds from Sales or Financing | 56,565,940.00 | *based on property tax assessed value for real property of Remi Hillsboro, LLC, Hillsboro Mile Properties, LLC and Enclave at Hillsboro, LLC |

**Uses (estimated)**

| | | |
|---|---:|---|
| Administrative Claim - Bankruptcy Attorney | 107,000.00 | *less retainer |
| Administrative Claim - Broker | 1,696,978.20 | *based on 3% of the estimated sale price above |
| Secured Taxing Authority Claims | 1,162,606.50 | |
| Lender Claim | 38,939,415.12 | *estimated |
| Priority Unsecured Claims | 44,122.87 | |
| General Unsecured Claims | 1,447,641.74 | *estimated and assumes allowance of claims that are currently disputed |

**Total**      **43,397,764.43**

**Remaining Cash**      **13,168,175.57**